## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PEEKAY ACQUISITION, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-11722 (___)<br><br>(Joint Administration Requested) |

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION LENDERS; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, submit this motion (the "Motion") requesting entry of an interim order (the "Interim Order"),[2] and a final order (the "Final Order") (i) authorizing the use of Cash Collateral and all other Prepetition Collateral pursuant to section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended and modified, the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1, 4001-2, and 9013-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (ii) granting adequate protection to the Prepetition Lenders pursuant to sections 105(a), 361, 362, 363 and 507 of the Bankruptcy Code, (iii) scheduling a hearing to consider entry of the Final Order (the "Final Hearing") pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(c) and (iv)

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Peekay, Inc. (3429); Peekay Boutiques, Inc. (7972); Christals Acquisition, LLC (0391); Peekay Acquisition, LLC (0923); Peekay SPA, LLC (2765); ConRev, Inc. (2441); Condom Revolution, Inc. (6019); Charter Smith Sanhueza Retail, Inc. (8963); ZJ Gifts F-2, L.L.C. (3565); ZJ Gifts F-3, L.L.C. (3562); ZJ Gifts F-4, L.L.C. (8006); ZJ Gifts F-5, L.L.C. (7062); ZJ Gifts F-6, L.L.C. (4381); ZJ Gifts I-1, L.L.C. (5099); ZJ Gifts M-3, L.L.C. (8925); ZJ Gifts M-1, L.L.C. (7202); and ZJ Gifts M-2, L.L.C. (6643). The Debtors' corporate headquarters and mailing address is 901 West Main Street, Suite A, Auburn, WA 98001.

[2] Capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to such terms as in the Interim Order.

granting related relief.  In support of this Motion, the Debtors submit the *Declaration of Albert Altro in Support of First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.  In further support of the Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

The Debtors' ability to continue their operations without interruption is essential for the Debtors to maximize the value of their estates for the benefit of all stakeholders and avail themselves of the "breathing room" afforded by a chapter 11 restructuring.  The Debtors' proposed use of Cash Collateral is premised upon an Approved Budget (defined below).  Absent authority to use Cash Collateral, even for a short period of time, the Debtors would be forced to take drastic, value-destroying measures such as ceasing all operations and commencing store level liquidation.  As a retail concern, such measures would result in the loss of virtually all of the Debtors' customers and, in turn, irreparably damage the Debtors' estates.  Authorizing the Debtors' use of Cash Collateral will enable the Debtors to continue operating in the ordinary course while formulating and seeking approval of the terms of a sale of substantially all of the Debtors' assets pursuant to Bankruptcy Code section 363.  Therefore, the relief sought in this Motion is necessary to maintain the value of the Debtors' business and, ultimately, effect a successful sale and reorganization process.

The Debtors recently entered into a proposed stalking horse purchase agreement (the "APA") with TLA Acquisition Corp., an affiliate of the Debtors' senior secured Term A Lenders (the "Stalking Horse Bidder").  The APA provides for the sale of substantially all the Debtors' assets pursuant to Bankruptcy Code section 363 to the Stalking Horse Bidder or a third party making a higher and better offer.  The Debtors propose to conduct a sale process that will require

competitive bidding and an auction to ensure the Debtors obtain maximum value for their assets. The Debtors' ability to conduct this sale process that will allow them to maximize value for all stakeholders is dependent on the Debtors' ability to use Cash Collateral as set forth in this Motion.

Accordingly, because the Debtors' continued use of Cash Collateral during the pendency of these cases is essential to preserve and maintain the going-concern value of their estates, the Debtors request authorization to use Cash Collateral and all other Prepetition Collateral pursuant to the terms of the Interim Order and the Final Order.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).[3] Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and other bases for the relief requested in this Motion are sections 105(a), 361, 362, 363 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014 and Local Rules 2002-1, 4001-2 and 9013-1.

## BACKGROUND

3.      On August 10, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). Concurrently with the filing of this Motion, the

---

[3] Pursuant to rule 9013-1(f) of the Local Rules, the Debtors hereby confirm their consent to entry of a final order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

Debtors have requested joint administration and procedural consolidation of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these Chapter 11 Cases and no statutory committee has been appointed.

5.      A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this Motion and these Chapter 11 Cases, are set forth in greater detail in the First Day Declaration, filed contemporaneously herewith and incorporated herein by reference.

## **RELIEF REQUESTED**

6.      By this Motion, the Debtors respectfully request that the Court enter the Interim Order, substantially in the form attached hereto as Exhibit A, and, after the Final Hearing, the Final Order, granting, among other things, the following relief:

(a)     authorizing the Debtors to use cash collateral (as such term is defined in section 363 of the Bankruptcy Code, "Cash Collateral") and all other Prepetition Collateral in accordance with the 13-week cash-flow forecast attached hereto as Exhibit B (the "Approved Budget"), subject to the Budget Variance (defined below);

(b)     authorizing the Debtors to provide adequate protection to the Prepetition Lenders to the extent of any actual diminution in value of their interest in the Prepetition Collateral, including Cash Collateral, in the form of the Adequate Protection Liens, the Adequate Protection Claims, and the payment of the Term A Lenders' fees and expenses;

(c)     subject to certain challenge rights of certain parties in interest, approving certain stipulations by the Debtors with respect to the Prepetition Loan Documents and the liens and security interests arising therefrom;

(d)     vacating and modifying the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the relief requested herein;

(e)    waiving the Debtors' right to surcharge the Collateral pursuant to section 506(c) of the Bankruptcy Code and any "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(f)    scheduling the Final Hearing, pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, to be held no later than 25 days after entry of the Interim Order, to consider entry of the Final Order; and

(g)    granting certain related relief.

## SUMMARY OF TERMS OF THE INTERIM ORDER

7.    Pursuant to the disclosure requirements of Bankruptcy Rule 4001(b), the Debtors submit the following summary of certain material provisions of the Interim Order.[4]

| Material Term | Summary |
| --- | --- |
| **Cash Collateral to Be Used**<br><br>Interim Order ¶ 2 | The Interim Order authorizes the Debtors to use the Cash Collateral of the Prepetition Lenders until the occurrence of the Termination Date in accordance with the Approved Budget, subject to the Budget Variance and other terms of the Interim Order. |
| **Parties with Interest in Cash Collateral**<br><br>Interim Order ¶ H | The Prepetition Lenders (defined below). |
| **Budget and Reporting Provisions**<br><br>Interim Order ¶¶ 8, 21 | **Budget.** The initial projected liquidity needs of the Debtors during the first 13 weeks of these Chapter 11 Cases are set forth in the Approved Budget attached hereto as <u>Exhibit B</u>.<br><br>**Budget Variance.** As of any date for which a Variance Report is delivered, (a) the Debtors shall not permit "Total Third Party Disbursements" to be greater than 110% of the amount shown for "Total Third Party Disbursements" in the Approved Budget for the applicable Test Period,[5] and (b) the Debtors shall not permit "Total Cash Receipts" to be less than 90% of the amount shown for "Total Cash Receipts" in the Approved Budget for the applicable Test Period. The permitted variances from the Approved Budget set forth in the preceding clauses (a) and (b) are referred to herein as the "<u>Budget Variance</u>."<br><br>**Reporting.** The Debtors shall use their reasonable best efforts to provide the Term A Lenders with the following documentation and |

---

[4] This summary is qualified in its entirety by reference to the applicable provisions of the Interim Order. In the event of any conflict or inconsistency between this summary and the provisions of the Interim Order, the provisions of the Interim Order shall control.

[5] "<u>Test Period</u>" means each weekly period following commencement of the Approved Budget.

| Material Term | Summary |
|---|---|
| | reports (collectively, the "Reporting Information"): (i) reports of cash receipts and disbursements and incurred expenses on a weekly basis, commencing on the entry of the Interim Order; (ii) copies of all reports filed with the Office of the United States Trustee within one (1) day before such filing; (iii) a monthly report of aggregate Inventory levels of all Debtors on a consolidated basis; and (iv) such additional financial or other information concerning the acts, conduct, property, assets, liabilities, operations, financial condition, and transactions of the Debtors, or concerning any matter that may affect the administration of the estate, as the Required Term A Lenders may from time to time reasonably request as soon as reasonably practicable, but in no event later than five Business Days after any such request.   All Reporting Information shall be in general accordance with practices applied with past accounting principles and bookkeeping practices and reporting of the Debtors to the Term A Lenders.   The Term A Lenders and their respective agents and advisors shall have full access, upon reasonable notice during normal business hours, to the Debtors' business records, business premises, and to the Collateral, and any documentation or information related thereto, to enable any Term A Lenders or any of their respective agents and advisors to (a) review, appraise, and evaluate the Collateral, (b) inspect and review the financial records and all other records of the Debtors concerning the Debtors' overall financial condition, and (c) evaluate all other records relating to the operations of the Debtors and value of the Collateral.   The Debtors shall use their reasonable best efforts to fully cooperate with the Term A Lenders regarding such reviews, evaluations, and inspections, and shall make their employees and professionals available during normal business hours to the Term A Lenders and their respective professionals and consultants to conduct such reviews, evaluations and inspections. <br><br> The Debtors shall provide the Term A Lenders with a weekly report (the "Variance Report"), in a form and substance acceptable to the Required Term A Lenders, in their sole discretion, of the Budget Variances for each weekly period beginning within three (3) Business Days after the end of such weekly period.   The first such report shall be delivered within three (3) Business Days after August 18, 2017, which report shall show the percentage variance of actual receipts and disbursements from those reflected in the Approved Budget for the cumulative Test Period. |

| Material Term | Summary |
|---|---|
| **Adequate Protection**<br><br>Interim Order ¶¶ 3, 4 | The Debtors propose to provide the following forms of adequate protection in favor of the Prepetition Lenders:<br><br>**Adequate Protection for Term A Lenders.** The Debtors have requested that the Term A Lenders consent to, among other things, the Debtors' use of the Prepetition Collateral. The Debtors acknowledge and stipulate that the Term A Lenders are entitled, pursuant to Bankruptcy Code sections 361 and 363(e), to adequate protection solely to the extent of their interests in the Prepetition Collateral, in exchange for the Debtors' continued use of such Prepetition Collateral. Subject only to the provisions of Paragraph 15 of the Interim Order, pursuant to Bankruptcy Code sections 361 and 363(e), as adequate protection of the interests of the Term A Lenders in the Prepetition Collateral against any diminution in value of such interests on account of (i) depreciation, physical deterioration, use, sale, loss, or decline in market value, (ii) the Debtors' use of Prepetition Collateral, and (iii) the imposition of the automatic stay, the Term A Lenders and their assignees and designees are hereby granted the protections described below and such other protections set forth in the Interim Order including, without limitation, the right to credit bid up to the full amount of the Term A Financing Agreement Obligations as set forth in Paragraph 7 of the Interim Order, which shall be referred to collectively as the "Term A Adequate Protection Obligations":<br><br>(a) Term A Adequate Protection Liens. The Prepetition Collateral Agent, solely on behalf of the Term A Lenders, shall be granted continuing valid, binding, enforceable, fully perfected and non-avoidable liens on and post-petition security interests in (the "Term A Adequate Protection Liens") the Prepetition Collateral, all of the other property, assets and interests in property and assets of the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases")), and all "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or Successor Cases), of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, including, without limitation, accounts, documents, inventory, equipment, capital stock in subsidiaries, investment property, instruments, chattel paper, commercial tort claims, cash, cash equivalents, securities accounts, deposit accounts, commodity accounts, real estate, leasehold interests, contracts, |

| Material Term | Summary |
|---|---|
|  | patents, copyrights, trademarks, causes of action, including, upon entry of the Final Order, all products and proceeds from any causes of action (the "Avoidance Actions") arising under chapter 5 of the Bankruptcy Code (each of the foregoing property, assets and interests collectively, the "Collateral"). The Term A Adequate Protection Liens shall be junior in priority only to: (i) the Carve-Out; and (ii) the Permitted Liens (as defined in the Prepetition Financing Agreement), other than to the extent that such Permitted Liens secure Term B Financing Agreement Obligations, on the Prepetition Collateral. The Term A Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims (including, without limitation, Permitted Liens securing Term B Financing Agreement Obligations and Term B Adequate Protection Liens (if any)) against any of the Collateral.<br><br>(b) Term A Adequate Protection Claim. Each Term A Lender shall be granted, as and to the extent provided by Bankruptcy Code section 507(b), an allowed superpriority administrative expense claim in the Chapter 11 Cases and any Successor Cases (the "Term A Adequate Protection Claim" and collectively, the "Term A Adequate Protection Claims"). The Term A Adequate Protection Claims shall have priority over any and all other administrative claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under Bankruptcy Code sections 105(a), 326, 328, 330, 331, 365, 503(a) 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof including, subject only to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of the Avoidance Actions; provided, that the Term A Adequate Protection Claims shall be junior in priority in all respects to only the Carve-Out.<br><br>(c) Payment of Term A Lenders' Fees and Expenses. The Debtors shall pay, monthly in arrears in cash, all reasonable and documented fees and expenses of Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis"), as counsel to the Term A Lenders and one law firm acting as Delaware counsel to the Term A Lenders in connection with the Chapter 11 Cases, regardless of the amounts budgeted in the Approved Budget and/or when such expenses are actually incurred, and shall include, without limitation, all fees, costs and expenses |

| Material Term | Summary |
|---|---|
| | incurred in connection with monitoring the Chapter 11 Cases and/or the enforcement or protection of any of the Term A Lenders' rights and remedies. Any such fees of, and expenses incurred by, Curtis and the one law firm acting as local counsel to the Term A Lenders shall be paid within ten (10) days of delivery of a summary invoice to the Debtors; provided, that Curtis and the one law firm acting as local counsel to the Term A Lenders shall promptly provide copies of such invoices to the U.S. Trustee and Creditors' Committee (if any). Objections to any such invoice may be made only by the Debtors, Creditors Committee (if any) or the U.S. Trustee within ten (10) days from receipt of such invoices. In the event that within ten (10) days from receipt of any such invoice the Debtors, Creditors' Committee (if any) or the U.S. Trustee raises an objection to a particular invoice, and the parties are unable to resolve any dispute regarding the fees and expenses included in such invoice, the Court shall hear and determine such dispute; provided, further, that payment of invoices shall not be delayed based on any such objections and the relevant professional shall only be required to disgorge amounts objected to upon being "so ordered" pursuant to a final order of the Court; provided, further, that the Court shall have exclusive jurisdiction over any such objection.<br><br>**Adequate Protection for Term B Lenders**. The Debtors have requested that the Term B Lenders consent to, among other things, the Debtors' use of the Prepetition Collateral. Subject to the provisions of Paragraph 15 of the Interim Order, and only if the Term B Lenders consent to the Debtors' use of Prepetition Collateral, the Debtors acknowledge and stipulate that the Term B Lenders are entitled, pursuant to Bankruptcy Code sections 361 and 363(e), to adequate protection solely to the extent of their interests in the Prepetition Collateral, in exchange for the Debtors' continued use of such Prepetition Collateral. Pursuant to Bankruptcy Code sections 361 and 363(e), as adequate protection of the interests of the Term B Lenders in the Prepetition Collateral against any diminution in value of such interests on account of (i) depreciation, physical deterioration, use, sale, loss, or decline in market value, (ii) the Debtors' use of Prepetition Collateral, and (iii) the imposition of the automatic stay, and only if the Term B Lenders consent to the Debtors' use of Prepetition Collateral, the Term B Lenders and their assignees and designees are granted the protections described in clauses (a) and (b) below and such other protections set forth in the Interim Order, which shall be referred to collectively as the "Term B Adequate Protection Obligations":<br><br>(a) Term B Adequate Protection Liens. Only if the Term B Lenders |

| Material Term | Summary |
|---|---|
| | consent to the Debtors' use of Prepetition Collateral, the Prepetition Collateral Agent, solely on behalf of the Term B Lenders, is granted continuing valid, binding, enforceable, fully perfected and non-avoidable liens on and post-petition security interests (the "Term B Adequate Protection Liens" and together with the Term A Adequate Protection Liens, the "Adequate Protection Liens") in the Collateral; provided, that the Term B Adequate Protection Liens (if any) shall be junior in priority to: (i) the Carve-Out; (ii) the Permitted Liens, other than Permitted Liens securing Term B Financing Agreement Obligations, on the Prepetition Collateral; (iii) the Term A Adequate Protection Liens on the Collateral; and (iv) the Prepetition Financing Agreement Liens securing the Term A Financing Agreement Obligations.  Except as provided in the Interim Order, the Term B Adequate Protection Liens (if any) shall be senior to all other security interests in and liens on the Collateral. |
| | (b)  Term B Adequate Protection Claim.  Only if the Term B Lenders consent to the Debtors' use of Prepetition Collateral, each Term B Lender shall be granted, as and to the extent provided by Bankruptcy Code section 507(b), an allowed superpriority administrative expense claim in the Chapter 11 Cases and any Successor Cases (the "Term B Adequate Protection Claim" and collectively, the "Term B Adequate Protection Claims" and together with the Term A Adequate Protection Claims, the "Adequate Protection Claims").  The Term B Adequate Protection Claims (if any) shall have priority over any and all other administrative claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under Bankruptcy Code sections 105(a), 326, 328, 330, 331, 365, 503(a) 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof including, subject only to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of the Avoidance Actions; provided, that the Term B Adequate Protection Claims (if any) shall be junior in priority in all respects to (i) the Carve-Out, (ii) the Term A Adequate Protection Claims and (iii) the Term A Financing Agreement Obligations.    Notwithstanding anything contained in this Motion, the Interim Order or the Final Order (if entered), no Term B Lender shall receive any recovery on account of its Term B Adequate Protection Claim unless and until all of the Term A Adequate Protection Claims and the Term A Financing |

| Material Term | Summary |
|---|---|
| | Agreement Obligations have been indefeasibly paid in full in cash. |
| **Priority of Adequate Protection Liens and Adequate Protection Superpriority Claims**<br><br>Interim Order ¶¶ 3, 4 | The Adequate Protection Liens shall have the priority set forth above between the Term A Lenders and the Term B Lenders and the together, Adequate Protection Liens shall be junior only to (i) the Carve-Out, and (ii) any other valid, enforceable, unavoidable, and properly perfected liens on the Prepetition Collateral existing on the Petition Date with priority over the Prepetition Financing Agreement Liens pursuant to the Prepetition Loan Documents. The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.<br><br>The Adequate Protection Claims shall have priority in payment over any and all administrative expense claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under Bankruptcy Code sections 105(a), 326, 328, 330, 331, 365, 503(a) 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof including, subject only to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of the Avoidance Actions; provided, that the Term A Adequate Protection Claims shall be junior in priority in all respects to only the Carve-Out and the Term B Adequate Protection Claims (if any) shall be junior in priority in all respects to (i) the Carve-Out, (ii) the Term A Adequate Protection Claims and (iii) the Term A Financing Agreement Obligations. |
| **Perfection of Adequate Protection Liens**<br><br>Interim Order ¶ 5 | Upon entry of the Interim Order, the Adequate Protection Liens will be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in the Interim Order).<br><br>The Prepetition Collateral Agent, at the sole direction of the Term A Lenders whose collective pro rata shares of the Term A Loans are equal to at least 50.1% (the "Required Term A Lenders"), also shall be authorized, but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) |

| Material Term | Summary |
|---|---|
| | financing statements, trademark filings, copyright filings, patent filings, mortgages, deeds of trust, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the Adequate Protection Liens.<br><br>A certified copy of the Interim Order (or the notice of the filing of the Interim Order) may, at the discretion of the Required Term A Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, deeds of trust, notices of lien or similar instruments, and all filing offices shall be authorized to accept such certified copy of the Interim Order or notice for filing and/or recording, as applicable. |
| **Modification of the Automatic Stay**<br><br>Interim Order ¶ 13 | Subject to the provisions of paragraphs 13(b) and 13(c) of the Interim Order, the automatic stay provisions of Bankruptcy Code section 362 shall be, to the extent applicable, vacated, and modified to the extent necessary to allow the Prepetition Collateral Agent, acting solely at the direction of the Required Term A Lenders, or the Required Term A Lenders:<br><br>(i) whether or not an Event of Default has occurred, to require all cash, checks or other collections or proceeds from Collateral received by the Debtors to be deposited in accordance with the requirements of the Prepetition Loan Documents, and to apply any amounts so deposited and other amounts paid to or received under the Prepetition Loan Documents in accordance with any requirements of the Prepetition Loan Documents, subject to the terms of the Interim Order;<br><br>(ii) upon the occurrence of an Event of Default, to exercise all rights and remedies provided for in the Interim Order, or under other applicable bankruptcy and nonbankruptcy law to effect the repayment of Term A Adequate Protection Obligations and the Prepetition Financing Agreement Obligations to the extent permitted under the Interim Order and the Prepetition Loan Documents (including the right to setoff funds in accounts maintained by the Debtors to repay the Term A Adequate Protection Obligations and the Prepetition Financing Agreement Obligations, as to which such prior written notice shall not be required) without requiring prior authorization of the Court in order to exercise such rights and remedies; and<br><br>(iii) immediately upon the occurrence of an Event of Default, without providing any prior notice thereof, the Prepetition Collateral Agent, acting solely at the direction of the Required Term A Lenders, or the |

| Material Term | Summary |
|---|---|
| | Required Term A Lenders: (A) may charge interest at the default rates pursuant to the Prepetition Loan Documents, (B) shall not have any further obligation to consent to the Debtors' use of Cash Collateral under the Interim Order or otherwise, and (C) may freeze monies of balance in the Debtors' accounts, subject to the terms of the Prepetition Loan Documents and the Interim Order, including the Carve-Out; provided, that any such freeze shall not prevent the Debtors from making any payment during the Waiting Period that is expressly authorized under the Approved Budget.<br><br>During the Waiting Period, the Debtors shall not use any Cash Collateral to pay any expenses except:  (i) those provided for in the Approved Budget that were actually incurred prior to an Event of Default, but which remain unpaid at the time of an Event of Default; (ii) payroll and other expenses critical to keep the business of the Debtors operating in accordance with the Approved Budget and (iii) those provided for in the Carve-Out.  In no event will expenses under the Approved Budget be considered incurred until the week such expenses are listed in the Approved Budget, except for fees and expenses payable to professionals pursuant to the Carve-Out.<br><br>The rights and remedies of the Prepetition Collateral Agent, acting solely at the direction of the Required Term A Lenders, and the Required Term A Lenders shall be cumulative and not exclusive of any rights or remedies that the Prepetition Collateral Agent, acting solely at the direction of the Required Term A Lenders, and the Required Term A Lenders may have under the Prepetition Loan Documents or otherwise. |
| **Debtors' Stipulations**<br><br>Interim Order ¶ G | The Debtors stipulate that, as of the Petition Date, (a) the Term A Financing Agreement Obligations are legal, valid, binding, fully perfected, and non-avoidable obligations in the aggregate liquidated amount of $35,494,500; (b) the Term B Financing Agreement Obligations are legal, valid, binding, fully perfected, and non-avoidable obligations in the aggregate liquidated amount of $16,466,837.49; (c) the Term B Financing Agreement Obligations are junior in priority of payment to the Term A Financing Agreement Obligations and the holders of the Term B Financing Agreement Obligations cannot receive any recovery on account of such obligations until the Term A Financing Agreement Obligations have been indefeasibly been paid in full in cash; (d) the Prepetition Financing Agreement Liens constitute legal, valid, binding, fully perfected, and non-avoidable senior first-priority obligations of the Debtors, enforceable in accordance with the terms and conditions of the Prepetition Loan Documents; (e) there has been a continuing |

| Material Term | Summary |
|---|---|
| | event of default under the Prepetition Loan Documents since February 15, 2016; (f) the Term B Lenders do not have any interest in the Prepetition Collateral due to the decline in value of the Prepetition Collateral, which is insufficient to repay in full the Term A Financing Agreement Obligations; and (g) no portion of the Term A Financing Agreement Obligations, the Term B Financing Agreement Obligations or Prepetition Financing Agreement Liens are subject to any offset, challenge, defense, claim, or counterclaim of any kind or any nature, nor is any portion of the Term A Financing Agreement Obligations, the Term B Financing Agreement Obligations or the Prepetition Financing Agreement Liens subject to avoidance, recharacterization, disallowance, or subordination pursuant to the Bankruptcy Code or other applicable law; and <br><br> Subject to entry of a Final Order, the Debtors and their estates shall be deemed to have (a) waived, discharged, and released each Prepetition Lender, solely in its capacity as such, together with each Prepetition Lender's shareholders, affiliates, parents, subsidiaries, controlling persons, directors, agents, officers, successors, assigns, directors, managers, principals, officers, employees, agents, investors, funds, advisors, attorneys, professionals, representatives, accountants, investment bankers, and consultants, each in their sole respective capacities as such (all of the foregoing, the "Prepetition Lender Releasees") of any and all "claims" (as defined in section 101(5) of the Bankruptcy Code), offsets, defenses, objections, challenges, causes of action, and/or choses in action, or other claims arising under or pursuant to the Bankruptcy Code or under any other applicable law against any and all of the Prepetition Lender Releasees, whether at law or in equity, arising under or relating to the Prepetition Loan Documents or the transactions contemplated thereunder, and (b) waived, discharged and released any offsets, defenses, objections, challenges, causes of action, and/or choses in action with respect to the Prepetition Financing Agreement Obligations and Prepetition Financing Agreement Liens, including, without limitation, actions related to recharacterization, subordination, avoidance, and any right or basis to challenge or object to the amount, validity, enforceability, and/or perfection of the Prepetition Financing Agreement Obligations and/or Prepetition Financing Agreement Liens. |
| **Termination Event** <br><br> Interim Order ¶¶ 10, 11 | The Debtors' right to use Cash Collateral under the Interim Order shall automatically terminate without further order of the Court upon the occurrence of the Termination Date. <br><br> The "Termination Date" shall occur upon the earliest to occur of: (a) |

| Material Term | Summary |
|---|---|
| | 80 days following the Petition Date; (b) the effective date of a chapter 11 plan; (c) the acceptance by any Debtor of any offer or bid for the purchase of all or substantially all of the assets of any such Debtor or any of the equity of a reorganized Debtor which is unacceptable to the Required Term A Lenders in their respective sole discretion, unless the proceeds of such offer or bid will be used to pay in full by an indefeasible payment in cash all Term A Financing Agreement Obligations; (d) the conversion or dismissal of the Chapter 11 Cases; or (e) the occurrence of an Event of Default, which includes the following:<br><br>(i) any Debtor's failure to comply with any term or condition of the Interim Order;<br><br>(ii) the Interim Order or the Final Order (if entered) ceases, for any reason (other than by reason of the express written agreement by the Required Term A Lenders), to be in full force and effect in any respect, or any Debtor so asserts in writing, or the Adequate Protection Liens or Adequate Protection Claims created by the Interim Order or the Final Order (if entered) cease in any respect to be enforceable and of the same effect and priority purported to be created hereby or any Debtor so asserts in writing;<br><br>(iii) the Court shall have entered an order amending, supplementing or otherwise modifying the Interim Order without the consent of the Required Term A Lenders;<br><br>(iv) any Debtor affirmatively supports in writing an action commenced by any other person against the Prepetition Lenders, with respect to the Prepetition Loan Documents, including, without limitation, any action to avoid or subordinate any obligations under the Prepetition Loan Documents (except for subordination provided for in the Prepetition Loan Documents);<br><br>(v) the Court shall have entered an order granting relief from the automatic stay to the holder or holders of any security interest to permit pursuit of any judicial or non-judicial transfer or other remedy against any of the Collateral;<br><br>(vi) the filing of any pleading by any Debtor in support of (in any such case by way of any motion or other pleading filed with the Court or any other writing to another party in interest executed by or on behalf of any such Debtor) any other person's opposition to any motion filed in the Court by the Prepetition Lenders seeking confirmation of the amount of their claims or the validity or |

| Material Term | Summary |
|---|---|
| | enforceability of the Prepetition Financing Agreement Liens, the Prepetition Financing Agreement Obligations, the Adequate Protection Liens, or the Adequate Protection Claims; |
| | (vii) The appointment under section 1104 of the Bankruptcy Code of a trustee or examiner with enlarged powers in the Chapter 11 Cases; |
| | (viii) The Debtors shall make a motion for an order of the Court, modifying, reversing, revoking, staying, rescinding, vacating or amending the Interim Order or the Final Order without the express prior written consent of the Required Term A Lenders; |
| | (ix) Unless the Term A Financing Agreement Obligations have been indefeasibly paid in full, the Debtors shall file or consent to any motion or application in the Chapter 11 Cases: (i) to obtain financing of any type from any person other than the Term A Lenders; (ii) to grant any lien that is *pari passu* or senior to any Prepetition Financing Agreement Lien or Term A Adequate Protection Lien, except as expressly permitted otherwise in the Interim Order; (iii) to recover from any portions of the Collateral any costs or expenses of preserving or disposing of such Collateral, except as provided in the Approved Budget; (iv) to grant a claim, other than that granted in the Interim Order or Final Order (and other than with respect to the Carve-Out), which is *pari passu* with or senior to any Term A Adequate Protection Claim (or there shall arise or be granted any claim *pari passu* or senior to any such claims); or (v) to convert any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; |
| | (x) The Debtors' exclusive periods to file a Chapter 11 plan shall have been terminated; |
| | (xi) The Debtors shall propose a Chapter 11 plan that does not contain a provision for payment of all Term A Financing Agreement Obligations in full by an indefeasible payment in cash on or before the effective date of such plan without the consent of the Required Term A Lenders; |
| | (xii) The Debtors shall (i) enter into, or the Court shall approve, any usage of Prepetition Collateral (except as expressly permitted in the Interim Order) that does not provide for the immediate payment in full by an indefeasible payment in cash of all Term A Financing Agreement Obligations upon approval by the Court or that in any way is inconsistent with any of the Prepetition Loan Documents or otherwise adversely affects the rights, remedies, claims, liens or |

| Material Term | Summary |
| --- | --- |
| | bankruptcy priorities of the Term A Lenders, or (ii) seek approval of, or the Court shall approve, any order permitting the use of Cash Collateral (except as expressly permitted in the Interim Order), without the consent of the Required Term A Lenders, that in any way is inconsistent with any of the provisions of the Interim Order or otherwise adversely affects the rights, remedies, claims, liens or bankruptcy priorities of the Term A Lenders; |
| | (xiii) Except as expressly set forth in the Interim Order or the Final Order, the Debtors shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition indebtedness unless approved by the Required Term A Lenders; |
| | (xiv) Any Debtor asserts any claim, litigation or proceeding against the Term A Lenders; |
| | (xv) The Debtors shall not have filed a motion, in form and substance acceptable to the Required Term A Lenders, seeking authority to sell all or substantially all of their assets pursuant to a stalking horse asset purchase agreement, on terms and conditions acceptable to the Required Term A Lenders in their sole discretion (the "APA"), subject to higher or better offers, within two Business Days of the Petition Date; |
| | (xvi) The Court shall have not entered the Interim Order, in form and substance acceptable to the Required Term A Lenders, within three days of the Petition Date; |
| | (xvii) The Court shall have not entered the Final Order, in form and substance acceptable to the Required Term A Lenders, within 25 days after the date the Bankruptcy Court holds a hearing on the Debtors' "first-day" motions; |
| | (xviii) The Court shall have not entered an order, in form and substance acceptable to the Required Term A Lenders, approving bid procedures within 25 days after the date the Bankruptcy Court holds a hearing on the Debtors' "first-day" motions; or |
| | (xix) The Court shall have not entered an order, in form and substance acceptable to the Required Term A Lenders, approving a sale of all or substantially all of the Debtors' assets within 80 days of the Petition Date. |
| Carve-Out | The "Carve-Out" is the sum of (i) amounts payable pursuant to 28 |

| Material Term | Summary |
|---|---|
| Interim Order ¶ 9 | U.S.C. § 1930 (collectively, the "UST Fees"); (ii) fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) subject in all respects to the Approved Budget (but exclusive of the application of any retainers by any of the Professionals (as defined below)), allowed fees, expenses and costs of attorneys, accountants and other professionals retained in the Chapter 11 Cases by the Debtors or the Creditors' Committee (if any), pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503 or 1103 (collectively, the "Professionals") owed pursuant to such Professionals' respective engagement letters and, to the extent permitted under the Approved Budget, which are actually incurred on or prior to the first Business Day following delivery of a Carve-Out Trigger Notice,[6] regardless of whether such fees, expenses and costs are allowed by interim order, procedural order, or otherwise, prior to or after such date (collectively, the "Estate Professional Fees"); and (iv) allowed fees, expenses and costs of Professionals owed pursuant to such Professionals' respective engagement letter (other than any success fee, transaction fee, or other similar fee set forth in such Professionals' respective engagement letter) to the extent permitted under the Approved Budget, which are actually incurred after the first Business Day following delivery of a Carve-Out Trigger Notice not to exceed $100,000 in the aggregate (the "Post-Carve-Out Trigger Notice Cap"), regardless of whether such fees, expenses and costs are allowed by interim order, procedural order, or otherwise, prior to or after such date, in each case subject to the rights of the Required Term A Lenders to object to the allowance of any such fees and expenses, it being understood that the Approved Budget shall always include cash to fund the Post-Carve-Out Trigger Notice Cap in full in cash to the extent provided in the Approved Budget.<br><br>The Carve-Out shall not include, apply or be available for any fees or expenses incurred by any party, absent the prior written consent of the Required Term A Lenders, in connection with: (a) the investigation (other than as expressly permitted in the Interim Order), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against the Prepetition Collateral Agent or any of the Prepetition Lenders, other than as expressly set forth in the Interim Order or the Final Order, as applicable, or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under, other than as expressly set forth in the Interim Order or any Final Order, as |

---

[6] The "Carve-Out Trigger Notice" means a written notice delivered (including by email) by the Required Term A Lenders to the Debtors, the Debtors' counsel, the U.S. Trustee and the Creditors' Committee (if any), which notice may be delivered at any time following the occurrence of the Termination Date.

| Material Term | Summary |
|---|---|
| | applicable, the Prepetition Loan Documents, including, without limitation, for lender liability or, other than as set forth in the Interim Order or the Final Order, as applicable, pursuant to sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to any of the Prepetition Lenders under the Interim Order or any Final Order, as applicable; (c) paying any amount on account of any claims arising before the commencement of these Chapter 11 Cases unless such payments are approved by an order of the Court; or (d) objecting to, contesting, or interfering with, in any way, the Prepetition Lenders' enforcement or realization upon any of the Prepetition Collateral once a Termination Date has occurred; provided, however, that nothing in the Interim Order or Final Order, as applicable, shall preclude the Debtors from seeking reimbursement for their reasonable fees and expenses incurred in responding to formal or informal discovery requests in connection with any of the foregoing.<br><br>The Carve-Out shall be senior to all liens and claims granted under the Interim Order, including the Adequate Protection Liens, the Adequate Protection Claims and any and all other liens or claims securing the Prepetition Financing Agreement Obligations. |
| **Lien Challenges**<br><br>Interim Order ¶ 15 | A party in interest with requisite standing, must commence, as appropriate, a contested matter or adversary proceeding, raising an objection, claim, suit or other  challenge, including, without limitation, a claim in the nature of setoff, counterclaim or defense against the Term A Lenders and/or the Term B Lenders on behalf of the Debtors' estates, or to object to or to challenge the Debtors' Stipulations prior to the expiration of the "Challenge Period," which means: (i) with respect to any party in interest other than the Creditors' Committee (if any), the period from the Petition Date until the date that is 75 calendar days after the entry of the Interim Order and (ii) with respect to the Creditors' Committee (if any), 60 calendar days from the date the U.S. Trustee appoints the Creditors' Committee (if any).<br><br>Upon the expiration of the Challenge Period without the filing of a Challenge (the "Challenge Period Termination Date"):  (A) any and all such Challenges and objections by any Challenge Party shall be deemed to be forever waived, released and barred; (B) all matters not subject to the Challenge, and all of the Debtors' Stipulations, admissions, agreements and releases contained in the Interim Order, including, without limitation, those contained in Paragraph G of the Interim Order, shall be binding on all parties in interest, including, |

| Material Term | Summary |
|---|---|
| | without limitation, the Creditors' Committee (if any) shall be of full force and effect and forever binding upon the Debtors, the Debtors' estates, and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases; and (C) any and all claims or causes of action against the Term A Lenders and/or the Term B Lenders and/or their respective affiliates, subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case solely in their respective capacities as such (collectively, the "Representatives"), and solely in their capacities as Representatives of the Term A Lenders and/or the Term B Lenders (as applicable), relating in any way to the validity, priority, or enforceability of the Term A Financing Agreement Obligations, Term B Financing Agreement Obligations and Prepetition Financing Agreement Liens shall be forever waived, released and barred by the Debtors, the Debtors' estates, and all creditors, interest holders and other parties in interest in the Chapter 11 Cases and any Successor Cases. <br><br> If any Challenge is timely filed during the Challenge Period, each of the Debtors' Stipulations and each of the Debtors' other admissions and agreements contained in the Interim Order, including, without limitation, those contained in paragraph G of the Interim Order, shall nonetheless remain binding and preclusive on the Creditors' Committee (if any) and on any other person or entity, except to the extent that such stipulations, admissions and agreements were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. |
| **Section 506(c) Waiver** <br><br> Interim Order ¶¶ 17, 18 | Subject only to entry of the Final Order, no action, inaction or acquiescence by the Prepetition Lenders, including funding the Debtors' ongoing operations under the Interim Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the Prepetition Lenders to a charge against the Collateral pursuant to Bankruptcy Code section 506(c), and no such costs, fees, or expenses shall be so charged against the Collateral without the prior written consent of the Required Term A Lenders. <br><br> Subject to entry of the Final Order, any and all payments or proceeds remitted to any Prepetition Lender pursuant to the provisions of the Interim Order, shall be received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code. |

| Material Term | Summary |
|---|---|
| **Waiver of "equities of the case" exception to section 552(b)**<br><br>Interim Order ¶¶ 17, 18 | Subject only to entry of the Final Order, no action, inaction or acquiescence by the Prepetition Lenders, including funding the Debtors' ongoing operations under the Interim Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the Prepetition Lenders to a charge against the Collateral pursuant to Bankruptcy Code section 552(b), and no such costs, fees, or expenses shall be so charged against the Collateral without the prior written consent of the Required Term A Lenders.  Subject only to entry of the Final Order, the Prepetition Lenders shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.<br><br>Subject to entry of the Final Order, any and all payments or proceeds remitted to any Prepetition Lender pursuant to the provisions of the Interim Order, shall be received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, the "equities of the case" exception of section 552(b) of the Bankruptcy Code. |

## PROVISIONS TO BE HIGHLIGHTED UNDER LOCAL RULE 4001-2(a)(ii)

8.      Local Rule 4001-2 requires that all requests to use cash collateral under section 363 of the Bankruptcy Code shall (a) recite whether the proposed order contains specified provisions (collectively, the "Highlighted Provisions"), (b) identify the location of any such provisions in the proposed order and (c) justify the inclusion of such provision in the proposed order.   In compliance with Local Rule 4001-2, the following summarizes the applicable provisions of the Interim Order and provides a justification for the inclusion of such Highlighted Provisions therein.

### A.      Local Rule 4001-2(a)(i)(A)

9.      *Cross-Collateralization*.   Local Rule 4001-2(a)(i)(A) requires disclosure of provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors (*i.e.*, clauses that secure prepetition debt

by postpetition assets in which the secured creditor would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law). The Interim Order does not grant cross-collateralization protection.

**B.      Local Rule 4001-2(a)(i)(B)**

10.      *Stipulation and Challenge Provisions.* Local Rule 4001-2(a)(i)(B) requires disclosure of provisions or findings of fact that bind the estates or other parties in interest to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate such matters. Paragraph G of the Interim Order binds the estates and all other parties in interest with respect to the amount of the Prepetition Financing Agreement Obligations and the validity, perfection and enforceability of the Prepetition Financing Agreement Liens but, as set forth in Paragraph 15 of the Interim Order, is subject to the rights of any party in interest with requisite standing to commence a Challenge Proceeding by no later than the date that is the later of: (a) with respect to any Creditors' Committee, sixty (60) days after the appointment of such Creditors' Committee and (b) with respect to other parties in interest with requisite standing (other than the Creditors' Committee) seventy-five (75) days after the date of entry of the Interim Order. Thus, any party in interest will have adequate opportunity to investigate the transactions under the Prepetition Financing Agreement and associated liens.

**C.      Local Rule 4001-2(a)(i)(C)**

11.      *Section 506(c) Waiver.* Local Rule 4001-2(a)(i)(C) requires explicit disclosure of provisions that seek to waive, without notice, whatever rights the estates may have under section

506(c) of the Bankruptcy Code. Paragraph 14 of the Interim Order provides that, except to the extent of the Carve-Out, no costs or expenses of administration of these cases, or any future proceeding that may result therefrom, shall, without the prior written consent of the Required Term A Lenders, be charged against or recovered from the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise. The Debtors believe that this provision is justified under the facts and circumstances of these Chapter 11 Cases because, absent the relief requested, the Debtors will not be permitted to use Cash Collateral on a consensual basis.

### D.    Local Rule 4001-2(a)(i)(D)

12.    *Liens on Avoidance Actions.*  Local Rule 4001-2(a)(i)(D) requires disclosure of provisions that immediately grant to the prepetition secured creditor liens on the Debtors' claims and causes of action under sections 544, 545, 547, 548 and 549 of the Bankruptcy Code (the "Highlighted Avoidance Actions"). Paragraphs 3(a) and 4(a) of the Interim Order provide that, upon entry of the Final Order, the Adequate Protection Liens shall attach to any proceeds of any claims and causes of action of the Debtors arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code. The Debtors believe that this provision is justified under the facts and circumstances of these Chapter 11 Cases because, absent the relief requested, the Debtors will not be permitted to use Cash Collateral on a consensual basis.

### E.    Local Rule 4001-2(a)(i)(E)

13.    *Use of Postpetition Loans to Pay Prepetition Debt.*  Local Rule 4001-2(a)(i)(E) requires disclosure of provisions that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt. The Interim Order does not deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt.

**F.**     **Local Rule 4001-2(a)(i)(F)**

14.     *Carve-Out*.  Local Rule 4001-2(a)(i)(F) requires disclosure of provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the Debtors with respect to a professional fee carve-out.  Paragraph 9 of the Interim Order provides for a Carve-Out for the fees and expenses of the Debtors' professionals and professionals retained by any Creditors' Committee.  The Interim Order also provides that, subject to entry of a Final Order, and provided that the Term A Loans have not been indefeasibly paid in full, any fees, expenses or costs incurred by the Creditors' Committee or its professionals in excess of the Investigation Budget or in excess of the amount budgeted for the Creditors' Committee's professionals set forth in the Approved Budget shall not constitute an allowable administrative expense claim, including for purposes of Section 1129(a)(9)(A) of the Bankruptcy Code.

**G.**     **Local Rule 4001-2(a)(i)(G)**

15.     *Non-Consensual Priming Liens*.  Local Rule 4001-2(a)(i)(G) requires disclosure of provisions that prime any secured lien without the consent of that lienor. The Interim Order does not provide for non-consensual priming of any existing secured lien, except that the Term A Adequate Protection Liens, if approved by the Court, shall be senior to the Permitted Liens securing Term B Financing Agreement Obligations. The Term B Lenders have been provided with notice of the relief requested herein.

**H.**     **Local Rule 4001-2(a)(i)(H)**

16.     *Waiver of Section 552(b) "Equities of the Case" Exception*.  Local Rule 4001-2(a)(i)(H) requires disclosure of provisions that seek to affect the Court's power to consider the equities of the case under section 552(b)(1) of the Bankruptcy Code.  Paragraph 15 of the Interim

Order provides that in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to any payments or proceeds remitted to any Prepetition Lender pursuant to the Interim Order, subject to the Carve-Out. The Debtors believe that this provision is justified under the facts and circumstances of these Chapter 11 Cases because, absent the relief requested, the Debtors will not be permitted to use Cash Collateral on a consensual basis.

## SUMMARY OF THE DEBTORS' PREPETITION INDEBTEDNESS

17. As of the Petition Date, the Debtors had approximately $69,811,337 in aggregate debt outstanding, comprised of approximately $35,494,500 outstanding under the Term A Loans and approximately $16,466,837.40 outstanding under the Term B Loans (each as defined in the Prepetition Financing Agreement), plus approximately $17,850,000 outstanding pursuant to certain unsecured Seller Notes (defined below). The Debtors have granted security interest in and liens on substantially all of their assets to secure the obligations under the Prepetition Financing Agreement.

A. **The Prepetition Financing Agreement**

18. On December 31, 2012, debtors Christals Acquisition, Peekay Acquisition and certain subsidiaries, as borrowers and guarantors, entered into a financing agreement (the "Prepetition Financing Agreement") with the Prepetition Collateral Agent, as collateral agent for the secured lenders. Under the Prepetition Financing Agreement, the lenders thereto (the "Prepetition Lenders") made a term loan to the borrowers initially in the aggregate principal amount of $38,215,939, consisting of a tranche A term loan for the principal amount of $27,000,000 (the "Term A Loan" and each Prepetition Lender providing a Term A Loan, a "Term A Lender"), and a tranche B term loan for the principal amount of $11,215,930 (the "Term B Loan" and each Prepetition Lender providing a Term B Loan, a "Term B Lender").

The proceeds of the loans made under the Prepetition Financing Agreement were used to repay then existing indebtedness, to finance a portion of the purchase price payable in connection with the Company's acquisition of Peekay and ConRev, to fund working capital requirements and to pay fees and expenses related to the Peekay and ConRev acquisition.

19.      The loans made under the Prepetition Financing Agreement are secured by first priority liens on substantially all of the Debtors' assets, including all accounts, chattel paper, commercial tort claims, deposit accounts, documents, equipment, general intangibles (including, without limitation, all payment intangibles), goods, instruments (including, without limitation, promissory notes), inventory, investment property, copyrights, patents and trademarks and licenses, letter-of-credit rights, supporting obligations, proceeds (including cash and noncash proceeds) and products of any of the foregoing collateral.  Pursuant to the Prepetition Financing Agreement, the Term A Loan is senior in priority and shall obtain repayment prior to the Term B Loan.

20.      On February 22, 2016, the Company, the Prepetition Collateral Agent, the Term A Lenders and the Term B Lenders entered into that certain Forbearance and Ninth Amendment Agreement (the "Forbearance Agreement").  Pursuant to the Forbearance Agreement, the Company agreed to grant the Term A Lenders warrants to purchase up to 2.5% of the common shares of the Company and the right to enter into a non-binding term sheet with respect to a "Step Two Restructuring Transaction" which is generally defined in the Forbearance Agreement as an out-of-court restructuring or a pre-arranged chapter 11 bankruptcy on terms acceptable to the Term A Lenders.

**B.**    **Unsecured Notes**

21.    In late 2012, the Company completed two separate transactions in which it acquired the Christals, Peekay and ConRev stores (the "Acquired Stores"). The prior owners of the Acquired Stores provided partial seller financing associated with these acquisitions in the form of $12,700,000 million in notes payable (the "Seller Notes"). The terms of the Seller Notes allow for unpaid interest to be added to the principal ("PIK Interest") on a quarterly basis. As of Petition Date, the total amount owing, including the PIK Interest, was approximately $19 million.

### THE DEBTORS' URGENT NEED TO USE CASH COLLATERAL

22.    As discussed in the First Day Declaration, the Debtors urgently need to use Cash Collateral to continue to operate their capital-intensive businesses and to fund the administration of these Chapter 11 Cases. As of the Petition Date, the Debtors had approximately $1.4 million in cash on hand, all of which constitutes Cash Collateral of the Term A Lenders. Absent the relief requested herein, the Debtors will not have sufficient liquidity to maintain their day-to-day operations, fund employee payroll and benefits obligations, pay vendors of necessary goods and services, and satisfy other working capital and operational requirements during their restructuring. All of the foregoing expenditures are necessary to preserve the value of the Debtors' estates as a going concern. Thus, without immediate access to Cash Collateral, the Debtors would be required to cease operations resulting in a substantial loss of going-concern value to the detriment of all parties in interest, thereby jeopardizing their ability to consummate a sale or restructuring transaction. Any delay in the Debtors' ability to access Cash Collateral would irreparably harm the Debtors and their estates. In particular, the Debtors' ability to

execute on the APA will be in jeopardy and the Debtors' sale process could be adversely affected.

## BASIS FOR RELIEF REQUESTED

23.     A debtor's use of property of the estate, including cash collateral, is governed by section 363 of the Bankruptcy Code, which provides, in pertinent part, as follows:

> If the business of the debtor is authorized to be operated under section ... 1108 ... of [the Bankruptcy Code] and unless the court orders otherwise, the [debtor] may ... use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).  A debtor may use cash collateral (a) with the consent of the secured party or (b) without the consent of the secured party if the court, after notice and a hearing, authorizes the debtor to use cash collateral in accordance with the provisions of section 363 of the Bankruptcy Code. *See* 11 U.S.C. § 363(c)(2).

24.     Section 363 of the Bankruptcy Code further provides that a debtor must "provide adequate protection" of the secured party's interest in the property against any diminution in value of such interest resulting from the debtor's use of the property. *See* 11 U.S.C. § 363(e). Notably, the Bankruptcy Code does not define "adequate protection." Instead, section 361 of the Bankruptcy Code provides a non-exhaustive list of examples of adequate protection, including cash payments, additional or replacement liens and other relief that will "result in the realization by such [secured party] of the indubitable equivalent of such entity's interest in such property." *See* 11 U.S.C. § 361; *see also Resolution Tr. Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("The Code does not expressly define adequate protection, but section 361 states that it may be provided by (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the 'indubitable equivalent' of the secured creditor's interest in such property.").

25.     Thus, determining what constitutes adequate protection is necessarily a fact-specific inquiry. *See id.*, 16 F.3d at 564 ("[A] determination of whether there is adequate protection is made on a case by case basis") (citing *In re O'Connor*, 808, F.2d 1393, 1397 (10th Cir. 1987)).  The focus of the adequate protection requirement is to preserve the secured party's position at the time of the bankruptcy filing and protect the secured party from diminution in the value of its collateral during the reorganization process. *Id.* ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy") (quoting *In re O'Connor*, 808 F.2d at 1396); *see also In re WorldCom, Inc.*, 304 B.R. 611, 618–19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the Bankruptcy Code, which sets forth how adequate protection may be provided under section 363, makes clear that the purpose ... is to insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy.").  "However, neither the legislative history nor the Bankruptcy Code require the Court to protect a creditor beyond what was bargained for by the parties." *Id.* at 619.

26.     Furthermore, the Bankruptcy Code mandates that a secured party be protected against diminution in the value of its interest in cash collateral only during the period of use. *See In re Cont'l Airlines, Inc.*, 146 B.R. 536, 539–40 (Bankr. D. Del. 1992) (noting that a secured party is only entitled to adequate protection to the extent the collateral declined in value); *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no diminution in the value of the secured party's collateral and the debtor can operate profitably postpetition, then the secured creditor is adequately protected against the use of cash collateral); *see also In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal

of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the chapter 11 reorganization.").

27.    The Term A Lenders have consented to the Debtors' use of Cash Collateral.  As set forth above and in the First Day Declaration, however, the Debtors urgently need to use Cash Collateral continue to fund the continued operation of their businesses.  Failure to obtain authorization to use Cash Collateral would be fatal to the Debtors and disastrous for their creditors.  The Debtors' inability to access Cash Collateral and operate their business would almost certainly lead to termination of the APA and foreclosure on the Debtors' assets by the Prepetition Lenders.  Accordingly, to ensure their continued access to the Cash Collateral during these Chapter 11 Cases, the Debtors propose to provide the Prepetition Lenders with adequate protection to the extent of any actual diminution in value of their interest in the Cash Collateral during the pendency of these Chapter 11 Cases.

28.    Specifically, the Debtors propose to provide the Prepetition Lenders with the following forms of adequate protection against the postpetition diminution in value of their interest in the Cash Collateral resulting from the Debtors' use of such property: (a) the Adequate Protection Liens; (b) the Adequate Protection Claims; and (c) payment of the Term A Lenders' professionals' fees as set forth in the Interim Order.

29.    Courts have held that granting replacement liens on assets generated by the debtors postpetition is an appropriate form of adequate protection. *See Swedeland Dev. Grp.*, 16 F.3d at 564, 566; *In re Conf. of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 209 n.9 (Bankr. D. Del. 1995) ("[P]ursuant to Code § 361, 'adequate protection' to a secured creditor may be provided in the form of an additional or replacement lien."); *see also In re Int'l Design & Display Grp., Inc.*, 154 B.R. 362, 364 (Bankr. S.D. Fla. 1993) (same); *In re*

*Karl A. Neise, Inc.*, 16 B.R. 602, 603 (Bankr. S.D. Fla. 1981) (same). Thus, the Debtors' proposal to provide the Prepetition Lenders with replacement liens and superpriority administrative expense claims adequately protects the Prepetition Lenders and supports the Debtors' use of Cash Collateral.

30.    Considered in the context of the Debtors' current and projected cash position – and because the Debtors will use the Cash Collateral to preserve the value of the Debtors' businesses as a going concern – the proposed adequate protection is sufficient to protect the Prepetition Lenders against any actual diminution in value of their interest in the Cash Collateral. Thus, under the circumstances of these Chapter 11 Cases, the Debtors submit that the adequate protection provided in the Interim Order is fair and reasonable under the circumstances, satisfies the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, and is in the best interests of the Debtors, their estates, and all parties in interest.

31.    Moreover, courts in this district have approved similar adequate protection packages in recent chapter 11 cases. *See, e.g., In re UCI Int'l, LLC*, No. 16-11354 (MFW) (Bankr. D. Del. June 3, 2016); *In re Offshore Grp. Inv. Ltd.*, No. 15- 12422 (BLS) (Bankr. D. Del. Jan. 8, 2016); *In re Samson Res. Corp.*, No. 15- 11934 (CSS) (Bankr. D. Del. Sept. 25, 2015); *In re Quicksilver Res. Inc.*, No. 15-10585 (LSS) (Bankr. D. Del. May 1, 2015); *In re Entegra Power Grp. LLC*, No. 14-11859 (PJW) (Bankr. D. Del. Sept. 3, 2014); *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. June 6, 2014).    Similar authorization is appropriate in these Chapter 11 Cases.

## REQUEST FOR MODIFICATION OF THE AUTOMATIC STAY

32.    Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of a bankruptcy petition.  The proposed Interim Order provides for the modification of the

automatic stay to, among other things, (a) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Claims; (b) permit the Debtors to perform such acts as the Prepetition Collateral Agent, solely at the direction of the Required Term A Lenders, may request to assure the perfection and priority of the liens granted by the Interim Order; (c) permit the Debtors to incur all liabilities and obligations to the Prepetition Lenders under the Interim Order; and (d) permit the Prepetition Lenders, upon the occurrence of the Termination Date, to exercise all rights and remedies provided for under the Interim Order.  Stay modifications of this type are standard features for the use of cash collateral and, in the Debtors' business judgment, are reasonable under the circumstances.  Accordingly, the Debtors request that the Court authorize the modification of the automatic stay as set forth in the Interim Order.

### REQUEST FOR INTERIM RELIEF

33.    Bankruptcy Rule 4001(b) provides that the Court may commence a final hearing on a motion to use cash collateral no earlier than 14 days after service of the motion. Fed. R. Bankr. P. 4001(b).  If the motion so requests, however, the Court may conduct a preliminary hearing before such 14-day period expires, and the Court may authorize the use of cash collateral only to the extent necessary to avoid immediate and irreparable harm to the debtors' estates pending a final hearing. *Id.*

34.    For the reasons discussed above, entry of the Interim Order authorizing the Debtors to use Cash Collateral and granting the other relief requested herein is necessary to avoid a severe disruption in the Debtors' operations at this critical juncture, to preserve the going-concern value of the Debtors' businesses and to maximize the value of the Debtors' estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the

"immediate and irreparable harm" standard of Bankruptcy Rule 4001(b) to support granting the relief requested herein.

### REQUEST FOR WAIVER OF BANKRUPTCY RULE 4001(a)(3)

35.    The Debtors request a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3).    Bankruptcy Rule 4001(a)(3) provides, "[an] order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3). The use of Cash Collateral is essential to prevent irreparable damage to the Debtors' estates. Accordingly, ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

### BANKRUPTCY RULE 6003 HAS BEEN SATISFIED

36.    Bankruptcy Rule 6003 empowers the Court to issue an order, within twenty-one (21) days after the Petition Date, granting a motion to "use ... property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b).  For the reasons discussed above, entry of the Interim Order is integral to the Debtors' ability to successfully transition into chapter 11. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h) REQUIREMENTS

37.    In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n

order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, the Debtors require immediate relief to continue ordinary business operations for the benefit of all parties in interest. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

38.     Similarly, for the reasons stated above, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed applicable.

## REQUEST TO SCHEDULE A FINAL HEARING

39.     Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, but in no event later than twenty-five (25) days after entry of the Interim Order, and fix the deadline for parties to object to the Motion. The Debtors will serve a copy of the signed Interim Order, which fixes the deadline for parties to object to the Motion, on each of the parties listed below.

## NOTICE AND NO PRIOR REQUEST

40.     Notice of this Motion will be provided to the following, or their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtors' creditors holding the thirty (30) largest unsecured claims as set forth in the list filed with the Debtors' petitions; (c) Cortland Capital Market Services LLC, as agent for the Debtors' prepetition secured lenders; (d) counsel to the Term A Lenders; (e) counsel to the Term B Lenders; (f) the Internal Revenue Service; (g) the United States Department of Justice; (h) the United States Securities and Exchange Commission; (i) the Attorney General for the State of Delaware and (j) all parties who have requested notice pursuant to Bankruptcy Rule 2002.

Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

41.    The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court (a) enter the Interim Order, substantially in the form attached hereto as Exhibit A, (b) following the Final Hearing, enter the Final Order, and (c) grant such other and further relief as is just and proper.

Dated: August 10, 2017  
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_____

Adam G. Landis (No. 3407)  
Matthew B. McGuire (No. 4366)  
Joseph D. Wright (No. 5669)  
919 Market Street, Suite 1800  
Wilmington, DE  19801  
Telephone: (302) 467-4400  
Facsimile: (302) 467-4450  
Email: landis@lrclaw.com  
      mcguire@lrclaw.com  
      wright@lrclaw.com

_Proposed Counsel to the Debtors and Debtors-In-Possession_