## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PEEKAY ACQUISITION, LLC, *et al.*,[1] | Case No. 17-11722 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 179, 236, 237, 326, 327, 328, 329, 330, 334, 343, 365, 366, 367** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE JOINT PLAN OF LIQUIDATION OF PEEKAY ACQUISITION, LLC AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND APPROVING THE DISCLOSURE STATEMENT FOR THE JOINT PLAN OF LIQUIDATION OF PEEKAY ACQUISITION, LLC AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE ON A FINAL BASIS

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors")

having:

a.   filed, on August 10, 2017, that certain Asset Purchase Agreement, dated as of August 9, 2017 between the Debtors and TLA Acquisition, Inc. [D.I. 26-2] and on October 31, 2017, that certain Amended and Restated Asset Purchase Agreement, dated as of August 9, 2017 between the Debtors and TLA Acquisition, Inc. (as further amended, modified or supplemented from time to time, the "Asset Purchase Agreement");

b.   filed, (i) on October 4, 2017, the *Joint Plan of Peekay Acquisition, LLC and Its Affiliated Debtors and Debtors-In-Possession Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 236]; and (ii) on October 19, 2017, the revised *Joint Plan of Liquidation of Peekay Acquisition, LLC and Its Affiliated Debtors and Debtors-In-Possession Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 326] (as

---

[1] The Debtors, along with the last four digits of each Debtor's tax identification number, are: Peekay, Inc. (3429); Peekay Boutiques, Inc. (7972); Christals Acquisition, LLC (0391); Peekay Acquisition, LLC (0923); Peekay SPA, LLC (2765); ConRev, Inc. (2441); Condom Revolution, Inc. (6019); Charter Smith Sanhueza Retail, Inc. (8963); ZJ Gifts F-2, L.L.C. (3565); ZJ Gifts F-3, L.L.C. (3562); ZJ Gifts F-4, L.L.C. (8006); ZJ Gifts F-5, L.L.C. (7062); ZJ Gifts F-6, L.L.C. (4381); ZJ Gifts I-1, L.L.C. (5099); ZJ Gifts M-3, L.L.C. (8925); ZJ Gifts M-1, L.L.C. (7202); and ZJ Gifts M-2, L.L.C. (6643). The Debtors' corporate headquarters and mailing address is 901 West Main Street, Suite A, Auburn, WA 98001.

further modified, supplemented and amended including all attachments and exhibits thereto, the "Plan");[2]

c.    filed, (i) on October 4, 2017, the *Disclosure Statement for the Joint Plan of Peekay Acquisition, LLC and Its Affiliated Debtors and Debtors-In-Possession Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 237]; and (ii) on October 19, 2017, the revised *Disclosure Statement for the Joint Plan of Liquidation of Peekay Acquisition, LLC and Its Affiliated Debtors and Debtors-In-Possession Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 327] (as further modified, supplemented and amended, the "Disclosure Statement");

d.    filed, on October 19, 2017, the *Notice of (A) Interim Approval of the Disclosure Statement and (B) Combined Hearing to Consider Final Approval of the Disclosure Statement and Confirmation of the Plan and the Objection Deadline Related Thereto* [D.I. 328] (the "Confirmation Notice");

e.    filed, on October 19, 2017, the *Non-Voting Status Notice With Respect to Impaired Classes Deemed to Reject the Debtors' Plan* [D.I. 329] (the "Non-Voting – Reject Notice");

f.    filed, on October 19, 2017, the *Non-Voting Status Notice With Respect to Unimpaired Classes Deemed to Accept the Debtors' Plan* [D.I. 330] ("Non-Voting – Accept Notice");

g.    distributed solicitations materials, including the ballot for voting on the Plan (the "Ballot") on or about October 19, 2017 in the form approved in that certain *Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* [D.I. 325] (the "Interim Approval/Procedures Order"), to holders of Term Loan A Claims, in compliance with the procedures contained in the Interim Approval/Procedures Order, title 11 of the United States Code (as amended, the "Bankruptcy Code"), and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as set forth in the *Affidavit of Service* of Rust Consulting/Omni Bankruptcy ("RustOmni") (and any supplements thereto), dated October 24, 2017 [D.I. 334] (the "Solicitation Affidavit"), and sworn to by Jennifer Marlene Castillo of RustOmni;

h.    filed on October 31, 2017, the *Notice of Filing of Plan Supplement* [D.I. 343] (as amended or modified, the "Plan Supplement");

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Asset Purchase Agreement, as applicable. The rules of interpretation set forth in Article I.B of the Plan shall apply to this order (the "Confirmation Order").

      i.      filed, on November 14, 2017, the *Declaration of Paul H. Deutch Regarding Analysis of Ballots for Accepting or Rejecting the Debtors' Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 365] (the "Voting Certification"); and

      j.      filed, on November 14, 2017, the *Debtors' Memorandum of Law in Support of Confirmation of the Joint Plan of Liquidation of Peekay Acquisition, LLC and Its Affiliated Debtors and Debtors-In-Possession Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Brief").

The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") having:

      a.      entered the Interim Approval/Procedures Order on October 19, 2017;

      b.      by the Interim Approval/Procedures Order, set the deadline to object to the Plan and final approval of the Disclosure Statement as November 10, 2017 at 4:00 p.m. (ET) and the Plan voting deadline as November 10, 2017 at 11:59 p.m. (ET);

      c.      reviewed the Asset Purchase Agreement, Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Voting Certification, and all other pleadings, exhibits, statements, affidavits, declarations and comments regarding Confirmation of the Plan, including all objections, statements and reservations of rights made with respect thereto;

      d.      heard the statements, arguments and objections made by counsel and parties in interest in respect of final approval of the Disclosure Statement, approval of the Sale Transaction and Confirmation of the Plan;

      e.      considered all oral representations, testimony, documents, filings and other evidence regarding final approval of the Disclosure Statement, approval of the Sale Transaction and Confirmation of the Plan;

      f.      received certain informal objections to, and reservation of rights with respect to, final approval of the Disclosure Statement, approval of the Sale Transaction and Confirmation of the Plan;

      g.      overruled any and all objections to final approval of the Disclosure Statement, approval of the Sale Transaction and Confirmation of the Plan, and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated in this Confirmation Order or on the record at the Confirmation Hearing; and

      h.      taken judicial notice of the papers and pleadings filed in these Chapter 11 Cases.

NOW, THEREFORE, it appearing that notice of the Confirmation Hearing and the opportunity for any party in interest to object to final approval of the Disclosure Statement, approval of the Sale Transaction and Confirmation of the Plan have been adequate and appropriate as to all entities affected or to be affected by the Disclosure Statement, the Sale Transaction, the Plan and the transactions contemplated thereby, that the legal and factual bases set forth in the documents filed in support of final approval of the Disclosure Statement, approval of the Sale Transaction and Confirmation of the Plan and presented at the Confirmation Hearing establish just cause for the relief granted herein, and that after due deliberation thereon and good cause appearing therefore, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    _Findings and Conclusions_.  The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    _Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))_.  The Bankruptcy Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334, and the _Amended Standing Order of Reference from the United States District Court for the District of Delaware_, dated as of February 29, 2012.  Final Approval of the Disclosure Statement and Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto.  Venue was

proper as of the Petition Date and is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Eligibility for Relief.  The Debtors each qualify as a "debtor" under Bankruptcy Code section 109.  As such, each Debtor is a proper proponent of the Plan.

D.    Commencement of the Chapter 11 Cases.  On August 10, 2017 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases by each filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their business and manage their properties as a debtors-in-possession, pursuant to Bankruptcy Code sections 1107(a) and 1108.  As of the date hereof, no trustee or examiner has been appointed in these Chapter 11 Cases.

E.    Creditors Committee.  On August 21, 2017, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors in the Chapter 11 Cases (the "Creditors Committee").

F.    Judicial Notice.  The Bankruptcy Court takes judicial notice of the docket of the Debtors' Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

G.    Claims Bar Date.  On September 6, 2017, the Bankruptcy Court entered the *Order Granting Motion of the Debtors for Entry of an Order (A) Establishing Bar Dates for Filing Proofs of Claim, (B) Approving the Form and Manner for Filing Proofs of Claim; and (C) Approving Notice Thereof* [D.I. 179] (the "Bar Date Order").  The Bar Date Order, among other things, (i) established October 11, 2017 as the general bar date and administrative bar date for

claims arising through September 30, 2017, (ii) established February 6, 2017 as the governmental bar date, (iii) approved the form and manner for filing proofs of claim, and (iv) approved notice of the applicable bar dates.

      H.    <u>Burden of Proof</u>.  The Debtors have the burden of proving the elements of Bankruptcy Code sections 1129(a) and (b) by a preponderance of the evidence.  The Debtors have met their burden with respect to each applicable element of Bankruptcy Code section 1129. Each witness who testified on behalf of the Debtors at or in connection with the Confirmation Hearing was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**Adequacy of the Disclosure Statement**

      I.    <u>The Disclosure Statement</u>.   The information contained in the Disclosure Statement contained extensive material information regarding the Debtors so that parties entitled to vote on the Plan could make informed decisions regarding the Plan.  Additionally, the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125 and complies with any additional requirements of the Bankruptcy Code, Bankruptcy Rules, and applicable non-bankruptcy law.  Specifically, but without limitation, the Disclosure Statement complies with the requirements of Bankruptcy Rule 3016(c) by sufficiently describing in specific and conspicuous bold language the provisions of the Plan that provide for releases and injunctions against conduct not otherwise enjoined under the Bankruptcy Code and sufficiently identifies the persons and entities that are subject to the releases and injunctions. The Debtors' use of the Disclosure Statement to solicit votes to accept or reject the Plan was authorized by the Interim Approval/Procedures Order and was appropriate.  Solicitation of votes on the Plan was in compliance with the Interim Approval/Procedures Order.

**The Solicitation Process**

J.        Solicitation.   Each of the Plan, the Disclosure Statement, the Ballot and the Confirmation Notice were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Interim Approval/Procedures Order.   The form of the Ballot adequately addresses the particular needs of these Chapter 11 Cases and is appropriate for the holders of Claims in Class 3 (Term Loan A Claims) – the Class of Claims entitled to vote to accept or reject the Plan.  Under the facts and circumstances of these Chapter 11 Cases, the period during which the Debtors solicited acceptances to the Plan was a reasonable period of time for holders to make an informed decision to accept or reject the Plan, and was in accordance with the Interim Approval/Procedures Order, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation.  The Debtors were not required to solicit votes from the holders of Claims in Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims), as these Classes and Interests are unimpaired under the Plan, and thus, the holders of such Claims or Interests are deemed to have accepted the Plan. The Debtors also were not required to solicit votes from the holders of Claims or Interests in Class 4 (Term Loan B Claims), Class 5 (Trade Vendor & Seller Note Claims), Class 6 (General Unsecured Claims), Class 7 (Subordinated Claims), and Class 9 (Interests), as these Classes and Interests are impaired under the Plan and are deemed to have rejected the Plan.  As described in and as evidenced by the Voting Certification, the transmittal and service of the Plan, the Disclosure Statement, the Ballot and the Confirmation Notice were timely, adequate and sufficient under the circumstances.

K.    <u>Notice</u>.  As is evidenced by the Solicitation Affidavit, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) were served with the Confirmation Notice, the Non-Voting – Accept Notice or the Non-Voting – Reject Notice, as applicable, and have been given due, proper, timely, and adequate notice under the facts and circumstances of these Chapter 11 Cases, in accordance with the Interim Approval/Procedures Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation, and such parties have had an opportunity to appear and be heard with respect thereto.  No other or further notice or re-solicitation is required.

L.    <u>Good Faith Solicitation</u>.  Based on the record before the Bankruptcy Court in these Chapter 11 Cases, the Debtors, their current members, officers, directors, employees and agents and its respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons (i) have acted in "good faith" within the meaning of Bankruptcy Code section 1125(e) in compliance with the applicable provisions of the Interim Approval/Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in Bankruptcy Code section 1125 and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan (to the extent deemed applicable), and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and

issuance of the securities under the Plan, if any, and are entitled to the protections afforded by Bankruptcy Code section 1125(e) and, to the extent such parties are listed therein, the exculpation provisions set forth in Article VII of the Plan.

M.    Voting. As evidenced by the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Plan, the Interim Approval/Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule, or regulation. As set forth in the Voting Certification on Exhibits A-Q thereto, Class 3 (Term Loan A Claims), the only Class of Claims entitled to vote on the Plan, voted to accept the Plan. Based on the foregoing, and as evidenced by the Voting Certification, at least one Impaired Class of Claims has voted to accept the Plan in accordance with the requirements of Bankruptcy Code sections 1124 and 1126.

N.    Notice of the Sale Transaction. Actual written notice of the Sale Hearing, the Auction, the Motion, the Sale Transaction, and the assumption, assignment and/or transfer of the Assigned Contracts, and a reasonable opportunity to object or be heard with respect thereto has been afforded to all known interested Persons and entities entitled to receive such notice, including, but not limited to, the following parties, or their counsel if known: (a) the Office of the United States Trustee for the District of Delaware; (b) the Stalking Horse Bidder and Term A Lenders; (c) the Creditors Committee; (d) all taxing authorities having jurisdiction over any of the Acquired Assets subject to the Sale, including the Internal Revenue Service; (e) the Environmental Protection Agency; (f) the Securities Exchange Commission; (g) the state/local environmental agencies in the jurisdictions where the Debtors own or lease real property; (h) all of the Debtors' known creditors; (i) all parties that have requested notice pursuant to Bankruptcy Rule 2002 as of the date prior to the date of entry of the Bid Procedures Order; (j) all persons or

entities known to the Debtors that have or have asserted a lien on, or security interest in, all or any portion of the Acquired Assets; (k) all counterparties to executory contracts with the Debtors; and (l) any Potential Bidders previously identified or otherwise known to the Debtors.

O.     Publication of Sale Notice. The Debtors published the Auction and Sale Notice in *The New York Times* on or about September 13, 2017.

P.     Notice of Assigned Contracts and Cure. In accordance with the provisions of the Bid Procedures Order, the Debtors have served notice of cure amounts and any additional cure notice (collectively, the "Cure Notice") upon all of the non-debtor counterparties (the "Contract Counterparties") to the unexpired leases and executory contracts being assumed and assigned to the Buyer setting forth: (i) the contract(s) and/or lease(s) to be assumed by the Debtors and assigned to the Buyer; (ii) the name and address of the Contract Counterparty thereto; (iii) notice of the proposed effective date of the assignment (subject to the right of the Buyer in its sole and absolute discretion to withdraw such request for assumption and assignment of the Assigned Contract(s) prior to the Closing Date); (iv) the amount, if any, determined by the Debtors to be necessary to be paid to cure and compensate for any existing default in accordance with sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Amount"); and (v) the deadlines by which any such Contract Counterparty must file an objection to the proposed assumption and assignment of any Assigned Contract. The service of such Cure Notice (i) was good, sufficient and appropriate under the circumstances of these Chapter 11 Cases; (ii) provided such counterparties with a full and fair opportunity to object to such assumption, assignment, or transfer and to the proposed Cure Amount set forth in the Cure Notice; and (iii) was in compliance with the Bid Procedures Order and applicable provisions of the Bankruptcy Rules and Local Rules. Accordingly, no other or further notice need be given in connection with such

assumption, assignment, or transfer or with respect to the amount of Cure Payments.  As evidenced by the affidavits of service previously filed with this Court and as approved under the Bid Procedures Order:  (i) due, proper, timely, adequate and sufficient notice of the Sale, the Auction and the assumption and assignment of the Assigned Contracts has been provided to all parties-in-interest; (ii) such notice was, and is, good, sufficient and appropriate under the circumstances of these Chapter 11 Cases, provided a fair and reasonable opportunity for parties-in-interest to object, and to be heard, with respect thereto, and was provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014, and the applicable Local Rules; and (iii) no other or further notice of with respect to such matters is necessary or shall be required.

Q.    Good Faith of the Buyer; No Collusion. The Buyer is not an insider (as that term is defined in section 101(31) of the Bankruptcy Code) of the Debtors.  The Buyer is purchasing the Acquired Assets in good faith, and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code.  The Buyer is therefore entitled to, and granted pursuant to paragraph 30 herein, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code, and the Buyer has otherwise proceeded in good faith in all respects in connection with the Sale in that, *inter alia*: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Buyer complied with the provisions in the Bid Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bid Procedures Order; (iv) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale Transaction have been disclosed; (v) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (vi) no common identity of

directors or controlling stockholders exists between the Buyer, on the one hand, and the Debtors, on the other hand; and (vii) the negotiation and execution of the Asset Purchase Agreement and Transaction Documents were at arms' length and in good faith.  None of the Debtors, the Buyer, or any of their respective Representatives, has engaged in any conduct that would cause or permit the Asset Purchase Agreement or any of the Transaction Documents, or the consummation of the Sale Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person in connection therewith.

R.      Highest and Best Offer.  In accordance with the Bid Procedures Order, the Asset Purchase Agreement submitted by the Buyer was deemed the only Qualified Bid (as defined in the Bid Procedures Order) and the Auction was cancelled.  The Debtors conducted a marketing and auction process in accordance with, and has otherwise complied in all respects with, the Bid Procedures Order.  The marketing and auction process set forth in the Bid Procedures Order afforded a full, fair and reasonable opportunity for any Person or entity to make a higher or otherwise better offer to purchase the Acquired Assets.  The Auction was duly noticed and a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Acquired Assets.  The Asset Purchase Agreement submitted by the Buyer constitutes the highest or otherwise best offer for the Acquired Assets, and will provide a greater overall recovery for the Debtors' Estates than would be provided by any other available alternative.  The Debtors' determination that the Asset Purchase Agreement submitted by the Buyer constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.  The Asset Purchase Agreement represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of these Chapter 11

Cases. No other Person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' Estates than the Buyer. Approval of the Sale Transaction and the prompt consummation of the Sale Transaction is in the best interests of the Debtors, their creditors, their Estates and other parties-in-interest.

S.      No Fraudulent Transfer; Not a Successor. The Asset Purchase Agreement and Transaction Documents were not entered into, and the Sale Transaction  is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under applicable law, and none of the parties to the Asset Purchase Agreement or any of the Transaction Documents are consummating the Sale Transaction with any fraudulent or otherwise improper purpose. The Purchase Price for the Acquired Assets constitutes (i) reasonably equivalent value, including under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration and fair value, including under the Uniform Fraudulent Conveyance Act and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession of the United States or the District of Columbia. Except as expressly set forth in the Plan or the Asset Purchase Agreement with respect to the Assumed Liabilities and Permitted Encumbrances, or as expressly set forth in the Global Settlement and Term B Loan Claims Settlement, the Buyer shall have no Liability, responsibility, or obligations of any kind or nature whatsoever for any interest of or against the Debtors, or otherwise related to the Acquired Assets, by reason of the transfer of the Acquired Assets to the Buyer. The Buyer shall not be deemed, as a result of any action taken in connection with the Sale, to: (1) be a successor (or other such similarly situated party) to the Debtors (other than with respect to the Assumed Liabilities and Permitted Encumbrances as expressly stated in the Plan or the Asset Purchase Agreement and as expressly set forth in the

Global Settlement and Term B Loan Claims Settlement); or (2) have, *de facto* or otherwise, merged or consolidated with or into the Debtors. The Buyer is not acquiring or assuming any Interest, except as expressly set forth in the Plan or the Asset Purchase Agreement with respect to the Assumed Liabilities and Permitted Encumbrances.

       T.     <u>Validity of Transfer</u>. Subject to the entry of this Confirmation Order, the Debtors have full corporate power and authority (i) to perform all of their respective obligations under the Plan, the Asset Purchase Agreement and the Transaction Documents, and the Debtors' prior execution and delivery thereof and performance thereunder, is hereby ratified in full, and (ii) to consummate the Sale Transaction. The Asset Purchase Agreement and Transaction Documents, and the Sale Transaction contemplated thereby, have been duly and validly authorized by all necessary corporate action. No further consents or approvals are required for the Debtors to consummate the Sale Transaction or otherwise perform their obligations under the Plan, the Asset Purchase Agreement or the Transaction Documents, except in each case as otherwise expressly set forth in the Plan, the Asset Purchase Agreement or applicable Transaction Documents. As of Closing, the transfer of the Acquired Assets to the Buyer, including, without limitation, the assumption, assignment and transfer of the Assigned Contracts, will be a legal, valid, and effective transfer thereof, and vests the Buyer with all right, title, and interest of the Debtors in and to the Acquired Assets and the Assigned Contracts, free and clear of all Claims and Interests[3] accruing or arising any time prior to Closing, except as expressly set forth in the

---

[3] "Claims and Interests" as used in this Confirmation Order is defined to include in addition to the types of claims described in paragraph V below, all of the following, in each case to the extent against or with respect to the Debtors or in, on, or against or with respect to any of the Acquired Assets: liens (as defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, Liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of first refusal, rights of setoff (except with respect to setoffs exercised prior to the Petition Date), or interests of any kind or nature whatsoever, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated,

Asset Purchase Agreement with respect to the Assumed Liabilities or Permitted Encumbrance, or as expressly set forth in the Plan, the Global Settlement or the Term B Loan Claims Settlement.

U.      Credit Bid.  Buyer is and was entitled to credit bid the Term Loan A Claims held by Buyer pursuant to section 363(k) of the Bankruptcy Code in connection with Buyer's acquisition of the Acquired Assets as contemplated by the Asset Purchase Agreement (the "Credit Bid").  The Credit Bid was a valid and proper offer pursuant to sections 363(b) and 363(k) of the Bankruptcy Code.  Upon Closing, all Term Loan A Claims that are not Credit Bid or that are not Assumed Liabilities, whether such Term Loan A Claims are held by Buyer or by the Term A Lenders, shall remain outstanding Claims against the Debtors.

V.      Section 363(f) is Satisfied.  The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction contemplated thereby if the sale of the Acquired Assets, including the assumption, assignment and transfer of the Assigned Contracts, to the Buyer were not free and clear of all Claims and Interests of any kind or nature whatsoever (except as expressly set forth in the Plan or the Asset Purchase Agreement with respect to Assumed Liabilities and Permitted Encumbrances or as expressly set forth in the Global Settlement and Term B Loan Claims Settlement), or if the Buyer, any of its affiliates or subsidiaries, or any of their respective representatives, would, or in the future could, be liable for

---

asserted or unasserted, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether imposed by agreement, understanding, Law, equity or otherwise, including, but not limited to, (i) Interests that purport to give to any Person a right or option to effect a setoff (except with respect to setoffs exercised prior to the Petition Date) against any or any forfeiture, modification or termination of the Debtors' interests in the Acquired Assets, or any similar rights; (ii) Interests arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, (iii) Interests that are or constitute, or that arise in connection with or with respect to, any Excluded Liability; (iv) Interests that arise from or in connection with any bulk sales or similar law, and (v) Interests arising under or in connection with any acts, or failures to act, of the Debtors or any of the Debtors' predecessors, Affiliates, or Subsidiaries, or any of their respective Representatives, including, but not limited to, Interests arising under any doctrines of successor, transferee, or vicarious liability, violation of the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, or other applicable state or Federal securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable Law or otherwise.

any of such Claims and Interests (except as expressly set forth in the Plan or Asset Purchase Agreement with respect to Assumed Liabilities and Permitted Encumbrances and as expressly set forth in the Global Settlement and Term B Loan Claims Settlement). The Debtors may sell or otherwise transfer the Acquired Assets free and clear of all Claims and Interests because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied. Those holders of Claims and Interests against the Debtors, their Estates or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale Transaction are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Claims and Interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Claims and Interests, if any, attach to the proceeds of the Sale Transaction ultimately attributable to the Acquired Assets in which such Creditor alleges or asserts an Interest, in the same order of priority, with the same validity, force and effect, that such Creditor had immediately prior to the Petition Date, subject to any claims and defenses the Debtors and their Estates may possess with respect thereto. Except as expressly set forth in the Plan or Asset Purchase Agreement with respect to Assumed Liabilities and Permitted Encumbrances and as expressly set forth in the Global Settlement and Term B Loan Claims Settlement, and without limiting the nature or scope of the above provisions of this paragraph, the transfer of the Acquired Assets, including the assumption, assignment and/or transfer of the Assigned Contracts, to the Buyer will not subject the Buyer, or its affiliates or subsidiaries, or any of their respective representatives to, or subject any Acquired Asset to or provide recourse for, any Liability or Lien (defined below) whatsoever with respect to the operation or condition of the Debtors' business or any of the Acquired Assets prior to or at the Closing of the sale or with respect to any facts, acts, actions, omissions,

circumstances or conditions existing, occurring or accruing with respect thereto prior to or at Closing, including, without limitation, any Liability or Lien arising from any of the following: (i) any employment or labor agreements, consulting agreements, severance arrangements, change in control agreements or other similar agreements to which the Debtors are or were parties, (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including without limitation, any paid-time-off or pension plan of the Debtors, (iii) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs and any obligations with respect thereto that arise from the Employee Retirement Income Security Act of 1974, the Fair Labor Standard Act, Title VII of the Civil rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Americans with Disabilities Act of 1990, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, (iv) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims, (v) environment liabilities, debts, claims or obligations which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any Environmental Laws, subject to paragraph 37 below, (vi) products liability or warranties, (vii) any bulk sales or similar law, (viii) any litigation by or against the Debtors and (ix) the Laws of the United States, any state, territory or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including, without limitation, any theory of antitrust, products liability, or successor, vicarious or transferee liability.  For the avoidance of doubt, the Liabilities and Liens[4] set forth in this paragraph are included in the defined term "Claims and Interests" for all purposes of this Confirmation Order.

---

[4] As used in this Confirmation Order, the term "Lien" or "Liens" include(s) any liens (as defined in Section 101(37)

W.    <u>Assumption, Assignment and/or Transfer of the Assigned Contracts</u>.    The assumption, assignment and/or transfer of the Assigned Contracts to the Buyer pursuant to the terms of this Confirmation Order is integral to the Asset Purchase Agreement and the Debtors have established good and sufficient cause for such assumption, assignment and/or transfer, which represent the reasonable exercise of sound and prudent business judgment by the Debtors. The Debtors have or will have as of Closing:  (i) cured, or provided adequate assurance of cure, of any default existing prior to Closing with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) provided compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  The respective amounts set forth on Exhibit A annexed to the Cure Notice (or any Additional Cure Notice(s) served in accordance with the Contract Procedures) are the sole amounts necessary under sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code to cure all such monetary defaults and pay all actual pecuniary losses under the Assigned Contracts.  The promise of the Buyer to perform the obligations first arising under the Assigned Contracts after their assumption and assignment to the Buyer constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparties to such Assigned Contracts.  Those non-Debtor parties to Assigned Contracts who did not object to the assumption, assignment or transfer of their applicable Assigned Contract, or to their applicable Cure Amount, are deemed to have consented thereto for all purposes of this Confirmation Order.  Pursuant to section 2.5 of the Asset Purchase Agreement, the Buyer shall

---

of the Bankruptcy Code), debts (as defined in Section 101(12) of the Bankruptcy Code), security interests, Claims, easements, mortgages, charges, indentures, deeds of trust, rights of way, encroachments, or any other encumbrances and other restrictions or limitations on ownership or use of real or personal property or irregularities in title thereto.

maintain certain rights to modify the list of the Assigned Contracts after the date of this Confirmation Order and during the Designation Period as set forth in such section. Such modification rights include, but are not limited to, the right of the Buyer, prior to the expiration of the Designation Period, to designate a Held Contract for assumption by the Debtors and assignment to the Buyer, as well as for rejection by the Debtors. The Buyer would not have agreed to the Sale without such modification rights. The notice and opportunity to object provided to Contract Counterparties to such Assigned Contracts and to other parties in interest, as set forth in the Contract Procedures contained in the Bid Procedures Order, fairly and reasonably protects any rights that such counterparties and other parties in interest may have with respect to such Contracts.

   X. <u>The Global Settlement and Term B Loan Claims Settlement</u>. The Plan, the Global Settlement and the Term B Loan Claims Settlement, as discussed in detail in the Disclosure Statement, are the result of good faith arms' length negotiations among the Debtors, the Creditors Committee, the Term A Lenders, the Term B Lenders, and the Buyer.. The Plan contains the Global Settlement by and among the Debtors, the Creditors Committee, and the Term A Lenders, and the Buyer and the Term B Loan Claims Settlement by and among the Debtors, the Term A Lenders, the Term B Lenders, and the Buyer. The Global Settlement and the Term B Loan Claims Settlement have facilitated the creation and implementation of the Plan and the non-Estate distributions set forth therein to holders of certain Allowed Claims. The Global Settlement and the Term B Loan Claims Settlement each (i) benefit the Debtors' Estates, Creditors and Interest holders and is in their best interests and (ii) is fair, equitable and reasonable. Accordingly, the Global Settlement and Term B Loan Claims Settlement are each fair and reasonable.

Y.    <u>Releases, Exculpation and Injunction</u>.  Pursuant to Bankruptcy Code section 1123(b)(3) and Bankruptcy Rule 9019(a), the releases, settlements, compromises, exculpations and injunctions set forth in Article VII of the Plan and implemented by this Confirmation Order, are fair, equitable, and reasonable.  The Exculpation, Debtor Releases and the Consensual Third Party Releases are warranted, necessary and appropriate, and are, in the case of the Consensual Third Party Release, fully consensual, and such releases are supported by the facts and the circumstances of these Chapter 11 Cases and are consistent with Bankruptcy Code sections 105, 1123(b)(6), and 1129 and applicable law in this jurisdiction.  The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the settlements, releases, exculpations, and injunctions provided for in Article VII of the Plan.

Z.    <u>Plan Supplement</u>.  The Debtors filed the Plan Supplement, which included: (a) the Asset Purchase Agreement; (b) the form of Trade Creditors Note; (c) the form of Trade Agreement; (d) the form of Seller Noteholders Note; (e) the form of Term B Loan Claims Note; (f) the Schedule of Assumed, Rejected and Held Contracts; and (g) the form of the Opt-In Elections.  All documents contained in the Plan Supplement comply with the terms of the Plan, and the filing, notice, and service of such documents were done in accordance with the Interim Approval/Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and no other or further notice is or shall be required.

## Compliance with the Requirements of Bankruptcy Code Section 1129

AA.    <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as the proponents of the Plan, thereby satisfying Bankruptcy Code section 1129(a)(1).

(i) <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>. With the exception of the Administrative Claims and Priority Tax Claims, which need not be classified, Article III of the Plan classifies nine (9) Classes of Claims and Interests in the Debtors. The Claims and Interests placed in each Class are substantially similar to the other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests. Accordingly, the Plan satisfies Bankruptcy Code sections 1122 and 1123(a)(1).

(ii) <u>Unimpaired Classes Specified (11 U.S.C. § 1123(a)(2))</u>. Articles III.B and III.C of the Plan specify that Claims in Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) (collectively referenced as the "<u>Unimpaired Classes</u>") are unimpaired under the Plan within the meaning of Bankruptcy Code section 1124, thereby satisfying Bankruptcy Code section 1123(a)(2).

(iii) <u>Specified Treatment of Impaired Class (11 U.S.C. § 1123(a)(3))</u>. Articles III.B and III.C of the Plan designate Claims and Interests in Class 3 (Term Loan A Claims), Class 4 (Term Loan B Claims), Class 5 (Trade Vendor & Seller Note Claims), Class 6 (General Unsecured Claims), Class 7 (Subordinated Claims), and Class 9 (Interests) (collectively referenced as the "<u>Impaired Classes</u>") as impaired within the meaning of Bankruptcy Code section 1124 and clearly specifies the treatment of such Claims in that Class, thereby satisfying Bankruptcy Code section 1123(a)(3).

(iv) <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment for each Claim or Interest in each respective Class thereby satisfying Bankruptcy Code section 1123(a)(4).

(v)    <u>Adequate Means for Plan Implementation (11 U.S.C. § 1123(a)(5))</u>.  The Plan and the Plan Supplement provide adequate and proper means for the implementation of the Plan, including, without limitation, (i) the Sale of the Debtors' Assets; (ii) the Global Settlement and Term B Loan Claims Settlement; and (iii) the procedures for making distributions to holders of Allowed Claims.  Accordingly, the Plan satisfies Bankruptcy Code section 1123(a)(5).

(vi)    <u>Prohibition of Issuance of Non-Voting Securities (11 U.S.C. § 1123(a)(6))</u>.  Bankruptcy Code section 1123(a)(6) does not apply to the Plan because the Debtors do not propose to issue any non-voting equity securities under the Plan and any charter of any of the Debtors will, after the Effective Date, no longer be valid and existing, except as otherwise set forth in Article IV.B of the Plan.

(vii)    <u>Designation of Officers, Directors or Trustees (11 U.S.C. § 1123(a)(7))</u>. Article IV.G provides that, as of the Effective Date, Albert Altro shall act as the Debtors' sole officer, director, and manager, as applicable, with respect to the Debtors' affairs. The manner of selection of Albert Altro as the Debtors' sole officer, director, and manager is consistent with the interests of creditors and equity security holders and with public policy as Albert Altro is familiar with the Debtors' business and is equipped to efficiently and competently handle the tasks for which he is to be appointed under Article IV.G.  Thus, the Plan complies with section 1123(a)(7).

(viii)    <u>Earnings from Personal Services (11 U.S.C. § 1123(a)(8))</u>.  Bankruptcy Code section 1123(a)(8) applies only to individual debtors and is not applicable to these Chapter 11 Cases.

(ix)    <u>Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1))</u>.  As permitted by Bankruptcy Code section 1123(b)(1), pursuant to Articles III.B

and III.C of the Plan, Claims and Interests in the Impaired Classes are impaired and, pursuant to Articles III.B and III.C of the Plan, Claims in the Unimpaired Class, are unimpaired.

(x)    Assumption and Rejection (11 U.S.C. § 1123(b)(2)).  As permitted by Bankruptcy Code section 1123(b)(2) and Article VI of the Plan, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed and assigned previously or rejected previously by the Debtors, (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume Filed on or before the Effective Date; or (iv) has been designated by the Buyer as an "Assumed Contract" or "Held Contract" pursuant to the terms of the Asset Purchase Agreement.  Rejection of these Executory Contracts and Unexpired Leases pursuant to the Plan satisfies the requirements of Bankruptcy Code section 365, and is expressly authorized by Bankruptcy Code section 1123(b)(2).  The Debtors have exercised reasonable business judgment in determining to reject the Executory Contracts and Unexpired Leases to be rejected under the Plan.  The rejection of each Executory Contract or Unexpired Lease rejected under the Plan shall be binding on the Debtors and each non-debtor party to each such Executory Contract or Unexpired Lease.

(xi)    Settlement/Retention of Claim or Interests (11 U.S.C. § 1123(b)(3)). Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan with respect to the Global Settlement and the Term B Loan Claims Settlement shall constitute a good faith compromise of all Claims, Interests, and controversies between the parties to those settlements.   The entry of this Confirmation Order constitutes the Bankruptcy Court's approval of all the compromises and settlements embodied in the Global Settlement and the Term B Loan Claims Settlement, and the

Bankruptcy Court's findings shall constitute its determination that the Global Settlement and the Term B Loan Claims Settlement meet the requirements of Bankruptcy Rule 9019 and , are in the best interests of the Debtors, the Estates, are fair, equitable and well within the range of reasonableness.  In concluding that the compromises and settlements set forth  in the Global Settlement and the Term B Loan Claims Settlement, contained in the Plan are substantively fair, the Bankruptcy Court considered the following factors: (i) the probability of success of potential litigation compared to the benefit of such compromises and settlement; (ii) the likelihood of complex and protracted litigation and the risk and difficulty of collecting on the judgment; (iii) the support of those holders of Allowed Claims electing to execute and return an Opt-In Election; (iv) the competency of counsel; and (v) the extent to which the  Global Settlement and the Term B Loan Claims Settlement are the product of arm's length negotiations.   The Bankruptcy Court finds that each of these factors weigh in favor of approving the Global Settlement and the Term B Loan Claims Settlement embodied in the Plan.  With respect to retention of Claims and Interests, as permitted by Bankruptcy Code section 1123(b)(3), the Debtors and/or Buyer may pursue (i) objections to, estimation of and settlements of Claims and Interests and (ii) any cause of action of the Debtors' Estates not otherwise released under the Plan or sold or otherwise transferred to the Buyer pursuant to the Sale.

      **(xii)**    Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).  As permitted by Bankruptcy Code section 1123(b)(6), the Plan includes other appropriate provisions not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, certain release, exculpation, and injunction provisions in Article VII of the Plan. Based upon the facts and circumstances of this Chapter 11 Case, the release, exculpation, and injunction provisions in the Plan, including the releases set forth in Article VII of the Plan, are

fair, equitable, and reasonable, are supported by sufficient and valuable consideration, are an integral component of compromises and settlements underlying the Plan, are necessary for the realization of value for stakeholders, are the product of extensive arm's length negotiations, or based on consent, were necessary to the formation of the consensus embodied in the Plan and the Plan Supplement documents, are in the best interests of the Debtors and their Estates and are, in light of the foregoing, appropriate.  The failure to implement the release, exculpation, and injunction provisions would impair the Debtors' ability to confirm and consummate the Plan. Each Exculpated Party and Released Party afforded value to the Debtors and aided in the Plan process.  Each Exculpated Party and Released Party played an integral role in the formulation of the Plan and has expended significant time and resources analyzing and negotiating the issues presented by these Chapter 11 Cases.  In addition, the releases by the Debtors set forth in Article VII.E of the Plan are consensual and the exculpations in Article VII.D of the Plan do not relieve any party of liability for gross negligence, fraud or willful misconduct.  Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered or adduced at the Confirmation Hearing, the Bankruptcy Court finds that the release, exculpation, and injunction provisions set forth in Article VII of the Plan are consistent with the Bankruptcy Code and applicable law and are appropriate under the circumstances.

BB.    <u>Compliance with Bankruptcy Rule 3016</u>.  The Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the Bankruptcy Court satisfies Bankruptcy Rule 3016(b).  The Plan and the Confirmation Notice describe in specific and conspicuous language all acts to be enjoined under the Plan and identify all entities that are subject to the injunctions set forth in the Plan in accordance with Bankruptcy Rule 3016(c).

CC.    The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). Except as otherwise provided for or permitted by order of the Bankruptcy Court, the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Interim Approval/Procedures Order in transmitting the Plan, the Plan Supplement, the Disclosure Statement, the Ballot, and related documents and notices and in soliciting and tabulating the votes on the Plan.  Accordingly, the requirements of Bankruptcy Code section 1129(a)(2) are satisfied.

DD.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtors have proposed the Plan, including all documents necessary to effectuate the Plan, in good faith and not by any means forbidden by law, thereby satisfying the requirements of Bankruptcy Code section 1129(a)(3).  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases.  The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of holders of Claims and Interests.  The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to maximize distributions to all Creditors and Interest holders.  Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with Bankruptcy Code sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142, and are integral to the Plan and supported by valuable consideration.

EE.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtors, or by any other person issuing securities or

acquiring property under the Plan, for services or for costs and expenses in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, has been approved by, or shall be subject to the approval of, the Bankruptcy Court as reasonable. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(4).

FF.    <u>Directors, Officers, and Successors (11 U.S.C. § 1129(a)(5))</u>.    Article IV.G provides that, as of the Effective Date, Albert Altro shall act as the Debtors' sole officer, director, and manager, as applicable, with respect to the Debtors' affairs.  Accordingly, the Plan satisfies Bankruptcy Code section 1129(a)(5).

GG.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction.  Accordingly, Bankruptcy Code section 1129(a)(6) is not applicable in this Chapter 11 Case.

HH.    <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>.  The liquidation analysis (attached as Exhibit B to the Disclosure Statement) and any other evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that each holder of a Claim or Interest in an Impaired Class will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.  The liquidation analysis provided in the Disclosure Statement, including the methodology used and estimations and assumptions made therein, and the evidence related thereto that was proffered at the Confirmation Hearing (a) is persuasive and credible as of the dates such evidence was prepared, presented, or proffered, (b) either has not been controverted by other persuasive evidence or has not been challenged, (c) is based upon reasonable and sound assumptions, and (d) provides a

reasonable estimate of the liquidation value of the Debtors' Estates upon a conversion to a chapter 7 case. Recoveries pursuant to the Plan are equal to or in excess of those that would be available if the Debtors were liquidated pursuant to chapter 7 and, therefore, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(7).

II.      Treatment of Administrative Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Claims under the Plan of the type specified in Bankruptcy Code sections 507(a)(1) through 507(a)(8), if any, complies with the provisions of Bankruptcy Code section 1129(a)(9) because Article II of the Plan provides that, except to the extent an entity agrees to less favorable treatment or as otherwise provided under the Plan or Asset Purchase Agreement: (i) each holder of an Allowed Administrative Claim shall be paid in full in Cash on the earlier of the date that is (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date or (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date; provided, however, that Allowed Section 503(b)(9) Claims shall be paid in full in Cash by the Buyer no later than forty-five (45) following the Effective Date or such other date as may be agreed to by the Buyer and the holder of such Claim. and (ii) each holder of an Allowed Priority Tax Claim shall either (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by Bankruptcy Code section 511; or (ii) such other treatment as may be agreed upon by such holder and the Debtors or otherwise determined upon an order of the Bankruptcy Court. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(9).

JJ.      Acceptance by at Least One Impaired Class (11 U.S.C. § 1129(a)(10)).    The Holders of Claims in Class 3 (Term Loan A Claims), which are impaired under the Plan, voted affirmatively to accept the Plan by the requisite majorities. *See* Voting Certification, Exhibit A. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(10).

KK.      Feasibility (11 U.S.C. § 1129(a)(11)).    The Plan satisfies Bankruptcy Code section 1129(a)(11).  The information in the Disclosure Statement and the evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and that there is a reasonable prospect of the Debtors being able to meet their financial obligations under the Plan and that confirmation of the Plan is not likely to be followed by the need for further liquidation or financial reorganization of the Debtors, thereby satisfying the requirements of Bankruptcy Code section 1129(a)(11).

LL.      Payment of Fees (11 U.S.C. § 1129(a)(12)).    Pursuant to Article II.C of the Plan, the Debtors are required to pay all statutory fees due and owing to the U.S. Trustee as of the Effective Date.  Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(12).

MM.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).    With respect to the Impaired Classes deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code even though the requirements of section 1129(a)(8) have not been met. The Debtors have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to Classes that were deemed to reject the Plan.  The Plan is "fair and equitable" with respect to the non-accepting

Claimants because no junior Class of Claims or Interests will receive or retain any property from the Debtors' Estates under the Plan on account of such Claims or Interests. The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Confirmation Hearing regarding the Debtors' classification and treatment of Claims: (a) is reasonable, persuasive, credible and accurate; (b) utilizes reasonable and appropriate methodologies and assumptions; and (c) has not been controverted by other creditable evidence. The Plan, therefore, satisfies the requirements of section 1129 of the Bankruptcy Code and may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

NN.    Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan that was solicited and brought to the Bankruptcy Court for confirmation in these Chapter 11 Cases. Accordingly, Bankruptcy Code section 1129(c) is inapplicable in this Chapter 11 Case.

OO.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 and no governmental entity has objected to the confirmation of the Plan on any such grounds. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(d).

PP.    Non-Applicability of Certain Sections (11 U.S.C. §§ 1123(c), 1129(a)(13) - (16), 1129(e)). The Debtors are not an individual and do not owe any domestic support. The Debtors also have no obligations to pay for retiree benefits and are neither a nonprofit corporation nor a "small business." Accordingly, Bankruptcy Code sections 1123(c), 1129(a)(13) - (16) and 1129(e) do not apply to these Chapter 11 Cases.

QQ.    <u>Modifications of the Plan (11 U.S.C. § 1127)</u>.  The modifications made to the Plan since the Solicitation do not constitute changes that materially or adversely change the treatment of any Claims or Interests and do not require additional disclosure under Bankruptcy Code section 1125 or resolicitation of acceptances or rejections of the Plan under Bankruptcy Code section 1126, nor do they require that holders of Claims or Interests against the Debtors be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Thus, the Debtors have complied in all respects with Bankruptcy Code section 1127 and Bankruptcy Rule 3019.

RR.    <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations and affidavits filed in connection with Confirmation of the Plan, and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129.

SS.    <u>Implementation</u>.  All documents and agreements necessary to implement the Plan have been negotiated in good faith and at arm's length, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements.

TT.    <u>Good Faith</u>.  Based on the record before this Bankruptcy Court in these Chapter 11 Cases, the Debtors will be acting in good faith within the meaning of Bankruptcy Code section 1125(e) if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, Sale Transaction and transfers contemplated thereby and (ii) take the actions authorized and directed by this Confirmation Order, and shall not be liable under any applicable law, rule, or regulation governing solicitation of acceptance or rejection of the Plan or the offer, issuance, sale, or purchase of securities.

UU.    <u>Additional Findings Regarding Releases</u>. The releases provided pursuant to Article VII of the Plan: (i) represent a sound exercise of the Debtors' business judgment; (ii) were negotiated in good faith and at arms' length; and (iii) are (a) in exchange for good and valuable consideration, (b) a good faith settlement and compromise of the claims released thereby, (c) in the best interest of the Debtors and their Estates and (d) fair, equitable, and reasonable under the circumstances of these Chapter 11 Cases. Moreover, all releases between non-debtors require the affirmative consent of each releasing non-debtor party.

VV.    <u>Retention of Jurisdiction</u>. Pursuant to Bankruptcy Code sections 105(a) and 1142, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases and the Plan to the fullest extent permitted by law.

**<u>ORDER</u>**

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

**<u>General Decrees and Implementation</u>**

1.    <u>Adequacy of the Disclosure Statement</u>. The Disclosure Statement hereby is APPROVED on a final basis as containing adequate information within the meaning of Bankruptcy Code section 1125 and contains sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules and regulations.

2.    <u>Confirmation of the Plan</u>. The Plan and each of its provisions, including the Plan Supplement, shall be, and hereby is, CONFIRMED pursuant to Bankruptcy Code section 1129. The Asset Purchase Agreement and Sale Transaction are authorized and approved. The terms of

the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

3.    <u>Objections Overruled</u>.    All objections, responses to, and statements and comments, if any, in opposition to or inconsistent with the Plan and/or the Sale Transaction, other than those withdrawn with prejudice or resolved in their entirety prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, OVERRULED and DENIED in their entirety.  All withdrawn objections are deemed withdrawn with prejudice.

4.    <u>Plan Classification Controlling</u>.    Unless otherwise set forth herein, the classifications of Claims and Interests for purposes of distributions under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballot tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballot solely for the purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes, (c) may not be relied upon by any Creditor as representing the actual classification of such Claims under the Plan for distribution or any other purpose (other than for evidencing the vote of such party on the Plan), and (d) shall not be binding on the Debtors or holders of Claims for purposes other than for voting.

5.    <u>The Global Settlement</u>.  The Global Settlement, and each component thereof, is hereby approved pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019 as fair and reasonable and in the best interests of the Debtors, their Estates, Creditors and Interest holders.  The Global Settlement is authorized and approved in all respects, subject to, and in accordance with, the terms and conditions thereof, the Plan and this Confirmation Order.  The compromises and settlements embodied in the Global Settlement are fair, equitable, and within

the range of reasonableness. The Debtors and the Buyer, as applicable, are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers, and to take any and all actions reasonably necessary or appropriate to consummate the Global Settlement.

6.     The Term B Loan Claims Settlement. The Term B Loan Claims Settlement, and each component thereof, is hereby approved pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019 as fair and reasonable and in the best interests of the Debtors, their Estates, Creditors and Interest holders. The Term B Loan Claims Settlement is authorized and approved in all respects, subject to, and in accordance with, the terms and conditions thereof, the Plan and this Confirmation Order. The compromises and settlements embodied in the Term B Loan Claims Settlement are fair, equitable, and within the range of reasonableness. The Debtors and the Buyer, as applicable, are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers, and to take any and all actions reasonably necessary or appropriate to consummate the Term B Loan Claims Settlement.

7.     Confirmation Notice. The Debtors provided good and sufficient notice of the Confirmation Hearing and the deadlines for filing and serving objections to the Plan, which notices are hereby approved.

8.     Implementation of the Plan. The Debtors and the Buyer, each to the extent applicable and in accordance with the terms and conditions of the Plan, are authorized to (i) execute, deliver, file, and/or record such documents, contracts, instruments, releases, and other agreements, including, without limitation, those contained in the Plan Supplement, (ii) make any and all distributions and transfers contemplated pursuant to, and as provided for in, the Plan, and (iii) take such other actions as may be necessary to effectuate, implement, and further evidence

the terms and conditions of the Plan.

9. <u>No Action</u>. To the extent that, under applicable non-bankruptcy law, any action to effectuate the terms of this Plan would otherwise require the consent or approval of the members, managers, directors or officers of the Debtors, this Confirmation Order shall, pursuant to Bankruptcy Code sections 1123(a)(5) and 1142, constitute the consent or approval, and such actions are deemed to have been taken by unanimous action of the members, managers, directors and officers of the appropriate Debtors.

10. <u>Binding Effect</u>. From and after entry of this Confirmation Order, and subject to the occurrence of the Effective Date, except to the extent otherwise provided in the Plan or this Confirmation Order, the provisions of the Plan, as applicable, shall be binding on and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Person, including, but not limited to, the Buyer, the Creditors Committee, all holders of Claims and Interests of the Debtors (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan), any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors, and all other parties in interest in the Chapter 11 Cases.

11. <u>Cancellation of Existing Securities</u>. Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan, on the Effective Date, the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes and bonds (but only with respect to (i) holders of Term A Loan Claims; and (ii) to the extent that holders of Term B Loan Claims and Seller Note Claims

execute and return Opt-In Elections), purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors related thereto shall be cancelled and deemed null and void; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim against the Debtors or Interests shall continue in effect for purposes of enabling holders of Allowed Claims or Interests to receive distributions under the Plan as provided herein; provided, further, however, that the preceding provision shall not result in any expense or liability to the Debtors, except to the extent set forth in or provided for under the Plan.

12.    Directors, Officers and Board Members of the Debtor.  As of the Effective Date, except as otherwise provided for in the Plan or herein, all officers, directors and members of the Debtors shall be deemed to have resigned.

**Approval of the Asset Purchase Agreement; Binding Nature**

13.    The Asset Purchase Agreement and the Transaction Documents, and all of the terms and conditions thereof, are hereby approved as set forth herein.  The consideration provided by the Buyer for the Acquired Assets under the Asset Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale Transaction may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision of the Bankruptcy Code.  Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtors are authorized and empowered to, and shall, take any and all actions necessary or appropriate to (a) consummate the Sale Transaction and the other transactions pursuant to and in accordance with the terms and conditions of the Asset Purchase

Agreement and the Transaction Documents (including, without limitation, any and all actions and covenants that arise, or otherwise apply to the time period, after Closing), and (b) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of their obligations as contemplated by the Asset Purchase Agreement and the Transaction Documents, in each case without further notice to or order of the Bankruptcy Court. The Asset Purchase Agreement and Transaction Documents shall be binding in all respects upon the Debtors, their Estates, the Buyer, and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of these Chapter 11 Cases. This Confirmation Order shall be binding in all respects upon the Debtors, their Estates, all creditors, all holders of equity interests in the Debtors, all holders of any Claim(s) (whether known or unknown) against the Debtors, any holders of Claims and Interests against, in or on all or any portion of the Acquired Assets, all non-Debtor parties to the Assigned Contracts, the Buyer, and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of these Chapter 11 Cases.

**Transfer of Acquired Assets Free and Clear of Interests; Injunction**

14.     Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors shall transfer the Acquired Assets, including but not limited to the Assigned Contracts, to the Buyer on the Closing Date in accordance with the Asset Purchase Agreement and Transaction Documents. Upon and as of Closing, such transfer shall constitute a legal, valid, binding and effective transfer of all of the Debtors' right, title and interest in and to such

Acquired Assets and the Buyer shall take title to and possession of such Acquired Assets free and clear of all Claims and Interests (except as expressly set forth in the Asset Purchase Agreement with respect to the Assumed Liabilities and Permitted Encumbrances and as expressly set forth in the Global Settlement and the Term B Loan Claims Settlement).

15.    All such Claims and Interests shall attach solely to the proceeds of the Sale Transaction with the same validity, priority, force and effect that they now have as against the Acquired Assets, subject to any claims and defenses the Debtors and their Estates may possess with respect thereto.  This Confirmation Order shall be effective as a determination that, on and as of Closing, all Claims and Interests of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase Agreement with respect to Assumed Liabilities and Permitted Encumbrances and as expressly set forth in the Global Settlement and the Term B Loan Claims Settlement) have been unconditionally released, discharged and terminated in, on or against the Acquired Assets.  The provisions of this Confirmation Order authorizing and approving the transfer of the Acquired Assets free and clear of Claims and Interests shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Confirmation Order.  For avoidance of doubt, notwithstanding the foregoing or any other provision of this Confirmation Order, nothing in this Confirmation Order shall modify, abridge, impair or otherwise alter any of the rights of the Term A Lenders under the *Amended Final Order (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection to the Prepetition Lenders; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* (Docket No. 341), and any other orders of the Bankruptcy Court entered into in connection therewith, with respect to or against the Debtors.

16.     Except as expressly permitted by the Plan, the Asset Purchase Agreement, this Confirmation Order or as expressly set forth in the Global Settlement or the Term B Loan Claims Settlement, all Persons and entities holding Claims and Interests (other than Assumed Liabilities and Permitted Encumbrances) against the Debtors are hereby forever barred, estopped and permanently enjoined from asserting those Interests against the Buyer, any of its Affiliates and Subsidiaries, and any of their respective Representatives, and each of their respective property and assets, including, without limitation, the Acquired Assets.  On and after the Closing Date, the Buyer shall be authorized to execute and file such documents, and to take all other actions as may be necessary, on behalf of each holder of Claims and Interests to release, discharge and terminate such Claims and Interests in, on and against the Acquired Assets as provided for herein, as such Claims and Interests may have been recorded or may otherwise exist.  On and after the Closing Date, and without limiting the foregoing, the Buyer shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise notice Claims and Interests that are extinguished or otherwise released pursuant to this Confirmation Order.  This Confirmation Order constitutes authorization under all applicable jurisdictions and versions of the Uniform Commercial Code for the Buyer to file UCC termination statements with respect to all security interests in or liens on the Acquired Assets.

17.     On and after Closing, any Persons holding Claims and Interests (other than a Permitted Lien or an Assumed Liability or as expressly set forth in the Global Settlement or the Term B Loan Claims Settlement) shall execute such documents and take all other actions as may be reasonably necessary to release their respective Claims and Interests in the Acquired Assets, as such Claims and Interests may have been recorded or otherwise filed.  The Buyer may, but

shall not be required to, file a certified copy of this Confirmation Order in any filing or recording office in any federal, state, county or other territory or jurisdiction in which the Debtors are incorporated or have real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge and terminate any of the Interests as set forth in this Confirmation Order as of the Closing Date. All Persons and entities that are in possession of any portion of the Acquired Assets on the Closing Date shall promptly surrender possession thereof to the Buyer at the Closing.

18.    To the extent provided by section 525 of the Bankruptcy Code, and subject to paragraph 37 hereto, no governmental unit (as defined in section 101(27) of the Bankruptcy Code) may deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant relating to the operation of the Acquired Assets or the Assigned Contracts, condition such a grant to, or discriminate with respect to such a grant on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale Transaction. This Confirmation Order is and shall be binding upon and govern the acts of all Persons and entities (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, and secretaries of state, federal and local officials) who may be required by operation of law, the duties of their office, or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease. Each of the foregoing Persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge and terminate any of the Claims and Interests or to otherwise consummate the

Sale Transaction contemplated by this Confirmation Order, the Asset Purchase Agreement or any Transaction Document.

**Assigned Contracts; Cure Payments**

19.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing, the Debtors' assumption, assignment and transfer to the Buyer of the Assigned Contracts are hereby authorized and approved in full subject to the terms set forth below.  The Debtors shall, on or prior to the Closing (or the expiration of the Designation Period), pay or cause to be paid the Cure Amounts (or reserve the Alleged Cure Amount as defined and set forth below) under the Assigned Contracts so that such Contracts may be assumed by the Debtors and assigned to Buyer on the Closing Date in accordance with this Confirmation Order, the Asset Purchase Agreement and the Transaction Documents.

20.     Upon and as of the Closing, the Debtors are authorized and empowered to, and shall, assume, assign and/or transfer each of the Assigned Contracts to the Buyer free and clear of all Claims and Interests (except as expressly set forth in the Plan or Asset Purchase Agreement with respect to the Permitted Encumbrances and Assumed Liabilities or as expressly set forth in the Global Settlement and Term B Loan Claims Settlement).  The payment of the applicable Cure Amounts (if any), or the reservation by the Debtors of an amount of cash that is equal to the lesser of (i) the amount of any cure or other compensation asserted by the applicable Contract Counterparty as required under section 365 of the Bankruptcy Code or (ii) the amount approved by order of this Court to reserve for such payment (such lesser amount, the "Alleged Cure Amount") shall, pursuant to section 365 of the Bankruptcy Code and other applicable Law, (a) effect a cure, or provide adequate assurance of cure, of all defaults existing thereunder as of the Closing Date and (b) compensate, or provide adequate assurance of compensation, for any actual

pecuniary loss to such non-Debtor party resulting from such default. Accordingly, on and as of the Closing, other than such payment or reservation, none of the Debtors, the Buyer, or their respective Affiliates or Subsidiaries shall have any further liabilities or obligations to the non-Debtor parties to the Assigned Contracts with respect to any additional amounts or claims (as defined in section 101(5) of the Bankruptcy Code) that arose, accrued or were incurred at any time on or prior to the Closing. The Buyer has provided adequate assurance of future performance under the relevant Assigned Contracts within the meaning of section 365(f) of the Bankruptcy Code.

21.     To the extent any provision in any Assigned Contract assumed or assumed and assigned (as applicable) pursuant to this Confirmation Order (a) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, such assumption or assignment (including, without limitation, any "change of control" provision), or (b) is modified, breached or terminated, or deemed modified, breached or terminated by any of the following: (i) the commencement of these Chapter 11 Cases, (ii) the insolvency or financial condition of the Debtors at any time before the closing of these Chapter 11 Cases, (iii) the Debtors' assumption or assumption and assignment (as applicable) of such Assigned Contract, or (iv) the consummation of the Sale, then such provision shall be deemed modified so as to not entitle the non-Debtor party thereto to prohibit, restrict or condition such assumption or assignment, to modify, terminate or declare a breach or default under such Assigned Contract, or to exercise any other default-related rights or remedies with respect thereto, including, without limitation, any such provision that purports to allow the non-Debtor party thereto to recapture such Assigned Contracts, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection

therewith. All such provisions constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to sections 365(b), 365(e) and 365(f) of the Bankruptcy Code.

22.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors in, to and under the Assigned Contracts, and each Assigned Contract shall be fully enforceable by the Buyer in accordance with its respective terms and conditions, except as limited or modified by the provisions of this Confirmation Order. Upon and as of the Closing, the Buyer shall be deemed to be substituted for the applicable Debtor or Debtors as a party to the applicable Assigned Contracts and, accordingly, the Debtors shall be relieved from any further liability under the Assigned Contracts pursuant to section 365(k) of the Bankruptcy Code.

23.    Upon the payment of the applicable Cure Amount or reservation of the Alleged Cure Amount, if any, the Assigned Contracts will remain in full force and effect, and no default shall exist, or be deemed to exist, under the Assigned Contracts as of the Closing Date nor shall there exist, or be deemed to exist, any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default as of the Effective Date.

24.    The rights of the Buyer to modify the list of the Assigned Contracts after the date of this Confirmation Order and up to the earlier of (a) the expiration of the Designation Period as set forth in section 2.5 of the Asset Purchase Agreement, and (b) any applicable deadline under the Bankruptcy Code are hereby approved.

25.    All Contract Counterparties to the Assigned Contracts that failed to timely object

to entry of this Confirmation Order shall be deemed to have consented to such assumption and assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Buyer shall enjoy all of the Debtors' rights, benefits and privileges under each such Assigned Contract as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.

26.    Nothing in this Confirmation Order, the Sale Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any Assigned Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.  The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of its respective rights to enforce every term and condition of the Assigned Contracts.

**Additional Injunction; No Successor Liability**

27.    Effective upon the Closing Date and except as expressly set forth in the Plan or Asset Purchase Agreement with respect to Assumed Liabilities and Permitted Encumbrances or as expressly set forth in the Global Settlement or the Term B Loan Claims Settlement, all Persons and entities who hold Claims against or Interests in the Debtors or who hold Claims against or Interests in any of the Debtors' assets (or any portion thereof) to be transferred to the Buyer are forever prohibited and permanently enjoined from (i) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral or other proceeding), to collect, recover or offset all such Claims and Interests;  (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order with respect to such Claims and Interests, (iii) creating, perfecting or enforcing such Claims and Interests, or (iv) asserting any setoff

(except for setoffs exercised prior to the Petition Date), or right of subrogation with respect to such Claims and Interests, in each case as against the Buyer, any of its Affiliates or Subsidiaries, or any of their respective Representatives, or any of their respective property or assets, including the Acquired Assets.

28.     The Sale Transaction contemplated by the Asset Purchase Agreement and the Transaction Documents do not cause there to be, and there is not (i) a consolidation, merger, or *de facto* merger of the Buyer, on the one hand, with or into the Debtors or their Estates, on the other hand, or vice versa; (ii) a substantial continuity between the Buyer, on the one hand, and the Debtors or their Estates, on the other hand, (iii) a common identity between the Buyer, on the one hand, and the Debtors or their Estates, on the other hand, or (iv) a mere continuation of the Debtors or their Estates, on the one hand, with the Buyer, on the other hand.

29.     Except as expressly set forth in the Plan or the Asset Purchase Agreement with respect to Assumed Liabilities and Permitted Encumbrances or as expressly set forth in the Global Settlement or the Term B Loan Claims Settlement, the transfer of the Acquired Assets, including, without limitation, the assumption, assignment and transfer of any Assigned Contract, to the Buyer shall not cause or result in, or be deemed to cause or result in, the Buyer, any of its Affiliates or Subsidiaries, or any of their respective Representatives, having any liability, obligation, or responsibility for, or any Acquired Assets being subject to or being recourse for, any Claims against or  Interests in the Debtors whatsoever, whether arising under any doctrines of successor, transferee or vicarious liability, breach of fiduciary duty, aiding or abetting breach of fiduciary duty or otherwise, whether at Law or in equity, directly or indirectly, and whether by payment, setoff (except for setoffs exercised prior to the Petition Date), or otherwise.

**Good Faith**

30.    The Sale Transaction contemplated by this Confirmation Order, the Plan, the Asset Purchase Agreement and Transaction Documents are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction and other transactions shall not alter, affect, limit, or otherwise impair the validity of the Sale or such other transactions (including the assumption, assignment and/or transfer of the Assigned Contracts), unless such authorization and consummation are duly stayed pending such appeal.    The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code.    The purchase price reflected in the Asset Purchase Agreement was not controlled by an agreement between potential or actual bidders within the meaning of section 363(n) of the Bankruptcy Code.    The Debtors and the Buyer have not engaged in any conduct that would cause or permit the Asset Purchase Agreement or the consummation of the Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

**Other Sale Provisions**

31.    The general release to be delivered by the Debtors to the Buyer and its Representatives as of the Closing pursuant to Section 4.2(h) of the Asset Purchase Agreement is hereby incorporated herein by reference and is approved in all respects, provided that it is not broader than the release set forth in section VII.E.1 of the Plan.    In addition, the general release to be delivered by the Buyer as of the Closing pursuant to Section 4.3(d) of the Asset Purchase Agreement is hereby incorporated herein by reference and is approved in all respects.    Effective

as of the Closing, such general releases shall be valid, binding and enforceable on all parties in interest in these Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases (including any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code or any other fiduciary hereafter appointed in any of the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases).

32.    The Buyer is hereby authorized, in its discretion, in connection with consummation of the Sale to allocate the Acquired Assets, Assumed Liabilities, and Assigned Contracts among its Affiliates, Subsidiaries, designees, assignees, and/or successors in a manner as it, in its discretion, deems appropriate and each such Person shall be entitled to all of the rights, benefits, privileges and protections of "the Buyer" as are accorded to the Buyer under this Confirmation Order, and the Debtors shall, to the extent set forth in the Asset Purchase Agreement and Transaction Documents, cooperate with and take all actions reasonably requested by Buyer to effectuate any of the foregoing.  In the event that the Buyer designates any designee to acquire any Acquired Assets, including, without limitation, any Assigned Contracts, in accordance with the terms and conditions of the Asset Purchase Agreement, then any reference to "the Buyer" in this Confirmation Order shall be deemed to be a reference to "the Buyer and/or its applicable permitted designee," unless the context requires otherwise, and such permitted designee shall be entitled to, and is hereby granted, the full rights, benefits, privileges and protections of the Buyer as are set forth in this Confirmation Order.

33.    Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Confirmation Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and

6006(d) are hereby expressly waived and shall not apply. Accordingly, the Debtors are authorized and empowered to close the Sale and other transactions immediately upon entry of this Confirmation Order.

34.    Nothing in this Confirmation Order shall modify or waive any closing conditions or termination rights in Articles 8 and 9, respectively, of the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

35.    No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale. To the fullest extent permitted under applicable law, no Transfer Taxes will be owed by any party in connection with the transactions contemplated hereby or by any of the other Transaction Documents.

36.    In connection with the sale of the Acquired Assets pursuant to the Asset Purchase Agreement, the Debtors shall be required to abide by their privacy policies in place as of the date of the Asset Purchase Agreement, as such policies may be amended from time to time. The sale of the Acquired Assets to Buyer is consistent with such privacy policies. Accordingly, no consumer privacy ombudsman need be appointed in connection with the sale under section 363(b)(1) of the Bankruptcy Code. Buyer shall honor and observe any and all policies of the Selling Entities in effect on the Petition Date prohibiting the transfer of personally identifiable information about individuals consistent with the requirements of Section 363(b)(1)(A) of the Bankruptcy Code

37.    Nothing in this Confirmation Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability (including but not limited to for reclamation and mitigation and any associated long-term protection requirements) to a governmental unit that any entity would be subject to as the owner or operator

of property after the date of entry of this Order. Nothing in this Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

38.    All payment or reimbursement obligations of the Debtors owed to the Buyer pursuant to the Asset Purchase Agreement or the Transaction Documents shall be paid in the manner provided therein, without further notice to or order of this Court. All such obligations shall constitute allowed administrative claims against the Debtors, with priority administrative expense status under sections 503(b) and 507(a)(2) of the Bankruptcy Code. Until satisfied in full in cash, all such obligations shall continue to have the protections provided in this Confirmation Order, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtors.

39.    Upon entry of this Confirmation Order, the caption in these Chapter 11 Cases shall be modified to reflect the change in the name of the Selling Entities, except that during the pendency the Chapter 11 Cases, the Selling Entities shall be permitted to use the name "PK Windown, LLC." solely in connection with matters relating to the Chapter 11 Cases and as former names for legal and noticing purposes, but for no other commercial purpose.

40.    The failure specifically to include any particular provision of the Asset Purchase Agreement in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and

approved in its entirety.

41.    The Asset Purchase Agreement and Transaction Documents may be modified, amended or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, without further notice to or order of this Court, provided that any such modification, amendment or supplement shall not have a material adverse effect on the Debtors' Estates unless approved by order of this Court.

42.    This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things, (i) interpret, implement, and enforce the terms and provisions of this Confirmation Order, the Asset Purchase Agreement, the Transaction Documents, and any amendments thereto and any waivers and consents given thereunder, (ii) compel delivery of the Acquired Assets to the Buyer; (iii) enforce the injunctions and limitations of liability set forth in this Confirmation Order, and (iv) enter any orders under sections 105, 363 and 365 of the Bankruptcy Code with respect to the Acquired Assets and Assigned Contracts.

**Treatment of Executory Contracts and Unexpired Leases Under the Plan**

43.    The provisions of Article V of the Plan governing executory contracts and unexpired leases are hereby approved in their entirety.

44.    Rejection of Contracts and Leases.    On the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Debtors; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume Filed on or before the Effective Date; or (iv) has been designated by the Buyer as an "Assumed Contract" or "Held Contract" pursuant to the terms of the Asset Purchase Agreement. This Confirmation Order shall constitute approval of any such rejections pursuant to Bankruptcy

Code sections 365(a) and 1123.

45.    Claims Based on Rejection of Contracts or Leases.    Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within twenty-one (21) days after the earlier of (a) service of Notice of the Effective Date, or (b) service of notice of entry of an order of the Bankruptcy Court (other than the Confirmation Order) approving the rejection of a particular Executory Contract or Unexpired Lease on the counterparty thereto; provided, however, with respect to any Executory Contract or Unexpired Lease designated as a Held Contract under Asset Purchase Agreement, Proofs of Claim with respect to Claims arising from the rejection of such Held Contract must be Filed with the Bankruptcy Court within twenty-one (21) days after the counterparty thereto has received written notice that such Held Contract has been designated as a Rejected Contract.    The Notice of the Effective Date shall indicate that all Executory Contracts and Unexpired Leases that do not fall into one of the four clauses set forth in Article VI.A of the Plan are deemed rejected as of the Effective Date.    The Notice of Effective Date shall also set forth the deadline for filing Proofs of Claim with respect to the same.

**Indemnification and Claims**

46.    Indemnification Obligations Regarding Prepetition Acts or Omissions.    Except as otherwise provided for in the Plan, any and all indemnification obligations of the Debtors to indemnify, reimburse or limit the liability of any Person, including, but not limited to, any officer or director of the Debtors, or any agent, professional, financial advisor, or underwriter of any securities issued by the Debtors, whether arising pursuant to charter, bylaws, contracts or applicable state law, shall be deemed to be, and shall be treated as, an executory contract and shall be and hereby is deemed rejected and terminated as of the Effective Date of the Plan.

47.    Objections to Claims.  Any objections to a proof of Claim, other than other than Professional Fee Claims, shall be filed on or before the Claims Objection Deadline, which is the later of (a) forty-five (45) days after the Effective Date, or (b) such other period of limitation as may be fixed by an order of the Bankruptcy Court, or which may be agreed to between the Debtors, Buyer and the claimant.  Absent further order of this Bankruptcy Court, any objection not filed by such deadline shall be deemed waived, and the Claim shall be an Allowed Claim in the amount set forth on the proof of claim filed by the holder of such Claim.  Notwithstanding anything to the contrary in the Plan, the U.S. Trustee's rights to object to Claims or Interests after the date hereof are hereby reserved.

48.    Setoffs and Recoupment.  Except with respect to Professional Fee Claims that are Allowed pursuant to the Plan, the Debtors may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant pursuant to Bankruptcy Code section 558 or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim it may have against the holder of such Claim.

49.    Subordinated Claims.  Except as expressly provided herein, the allowance, classification and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Bankruptcy Code section 510(b) or otherwise.

50.    Administrative Claim Bar Date.  Except as otherwise provided in the Plan, requests for payment of Administrative Claims must have been or be filed on or before the

Administrative Claims Bar Date, which means (a) October 11, 2017 at 4:00 p.m. (E.T) for all Administrative Claims arising, accruing or otherwise due and payable any time during the period from the Petition Date through and including September 30, 2017, or (b) twenty-one (21) days from service of notice of the Effective Date for all Administrative Claims arising, accruing or otherwise due and payable any time during the period from October 1, 2017 through the Closing. The Notice of Effective Date shall also set forth the deadline for filing Proofs of Claim with respect to the same.  Except as otherwise ordered by the Court, holders of Administrative Claims that are or were required to, but did not or do not, file and serve a request for payment of such Administrative Claims by such applicable dates shall be entitled to no distribution under the Plan.

51.    <u>Professional Fee Claims</u>.  All final requests for Payment of Professional Fee Claims for services rendered before the Effective Date must be filed and served on the Debtors, and such other Entities who are designated by the Bankruptcy Rules, the Interim Compensation Order or any other applicable order of the Bankruptcy Court, and other necessary parties in interest no later than twenty (20) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court; <u>provided</u>, <u>however</u>, that any Person who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order.  Objections to any Professional Fee Claim must be filed and served on the Debtors and the requesting party no later than twenty one (21) days from the service of an application for final allowance of a Professional Fee Claim.  To the extent necessary, the Plan and this Confirmation Order shall amend and supersede any previously entered order regarding

the payment of Professional Fee Claims.  On the Effective Date, the Professional Fee Claim Reserve shall be transferred by the Debtors to Landis Rath & Cobb LLP's IOLTA account to be held for the distribution of Allowed Professional Fee Claims. Upon entry of a Final Order approving any such application for such Professional Fee Claim, Landis Rath & Cobb LLP shall promptly distribute from the Professional Fee Claim Reserve any unpaid portion of such Allowed Professional Fee Claim. To the extent that any Cash is remaining in the Professional Fee Claim Reserve after payment in full of all Allowed Professional Fee Claims, Landis Rath & Cobb LLP shall promptly transfer any such Cash to the Buyer or its designee(s). Notwithstanding anything contained in the Plan or this Confirmation Order, pursuant to the Global Settlement, the Professional Fee Claims of the Creditors Committee shall be limited to $212,500.00 in the aggregate and any Professional Fee Claims in excess of such amounts – including any Professional Fee Claims for services rendered before, on, or after the Effective Date – shall be deemed waived by the holders thereof.

52.    <u>Post-Effective Date Expenses</u>.  From and after the Effective Date, the payment of the fees and expenses of the retained professionals of the Debtors shall not be subject to an application and may be made in the ordinary course of business and without approval of the Bankruptcy Court.

**<u>Releases, Injunction and Exculpation</u>**

53.    All release, injunction and exculpation provisions contained in the Plan, including, without limitation, those contained in Article VII of the Plan, are hereby authorized, approved and shall be effective and binding on all persons and entities, to the extent expressly described in the Plan.

54.    <u>Releases by the Debtors</u>.  Pursuant to section 1123(b) of the Bankruptcy Code and

to the fullest extent authorized by applicable law, and except as otherwise specifically provided in the Plan, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is expressly, unconditionally, generally and individually and collectively released, acquitted and discharged by the Debtors and their Estates from any and all actions, claims, obligations, rights, suits, judgments, damages, demands, debts, rights, remedies, Causes of Action, and liabilities of any nature whatsoever, including any derivative claims or claims for recharacterization, subordination, or avoidance of the Term A Loan Claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Sale Transaction, the Restructuring Transactions, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Restructuring Documents or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that

the foregoing releases shall have no effect on (x) the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct, or (y) any claim or cause of action that is an Acquired Cause of Action.

55.    <u>Consensual Third Party Releases</u>.    Upon execution and delivery of its Opt-In Election, for good and valuable consideration, the adequacy of which is hereby confirmed, each electing holder of a Class 5 Trade Vendor & Seller Note Claim and each electing holder of a Class 4 Term B Loan Claim, shall be deemed to forever release, waive, and discharge the Released Parties of all claims, obligations suits, judgments, damages, demands, debts, rights, remedies, Causes of Action and liabilities of any nature whatsoever, whether direct or derivative, known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, including, without limitation, any of the foregoing based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Sale Transaction, the Restructuring Transactions, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Restructuring Documents or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing releases shall

have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct; provided, further, that the releases set forth in this section shall not be deemed a release of obligations owing by any party under the Global Settlement, Term B Loan Claims Settlement or the Plan.

56.    Injunction. Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Entities that have held, hold or may hold any Interest in the Debtors or a Claim, Cause of Action, or other debt or liability against the Debtors or against any Released Party that have been released and/or exculpated under the this Plan (the "Released Claims and Interests") are permanently enjoined from taking any of the following actions against the Debtors or the Released Parties, or any of their respective property on account of such Claims or Interests, or their respective predecessors, successors and assigns, subsidiaries, Affiliates, current (as of the Effective Date) directors, officers, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, and other Professionals solely in their respective capacities as such or any property of the same, on account of such Released Claims and Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting any right of setoff (other than setoffs exercised prior to the Petition Date), or subrogation of any kind against any debt, liability or obligation on account of or in connection with or with respect to any Released Claims or Interests; and (c) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with this provision; provided, however, that the foregoing injunction shall have no effect on the liability of

any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

57.    Exculpation.   Except as otherwise provided in the Plan or this Confirmation Order, effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from, any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; provided, however, that the foregoing "exculpation" shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.  The Exculpated Parties have, and upon Confirmation shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of acceptances and rejections of the Plan and the making of distributions pursuant to the Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable, law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**Creditors Committee, Payment of Statutory Fees and Tax Issues**

58.    Dissolution of the Creditors Committee.   Upon the Effective Date, the Creditors Committee shall dissolve automatically in accordance with Article XI.C of the Plan.   The members of the Creditors Committee and the Professionals retained by the Creditors Committee shall have no further duty or obligation in respect to the Chapter 11 Cases, except with respect to the Professional Fee Claims asserted by the Creditors Committee's Professionals.  The Debtors shall not be responsible for paying any fees or expenses incurred by the Creditors Committee after the Effective Date.

59.    Payment of Statutory Fees.  All fees due and payable pursuant to section 1930 of

Title 28 of the U.S. Code ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Debtors and, subject to the reservation of rights at the end of this paragraph, any entity making disbursements on behalf of any Debtor or disbursements on account of an obligation of any Debtor (each a "Disbursing Entity"), shall be jointly and severally liable to pay Quarterly Fees when due and payable. The Debtors shall file with the Bankruptcy Court all Quarterly Reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Debtors shall file with the Bankruptcy Court Quarterly Reports when they become due, in a form reasonably acceptable to the U.S. Trustee, which Quarterly Reports shall include a separate schedule of disbursements made by any Disbursing Entity during the applicable period, attested to by an authorized representative of such Disbursing Entity. Each and every one of the Debtors and Disbursing Entities shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; provided, however, notwithstanding anything contained herein, the Debtors, Buyer and the U.S. Trustee reserve their respective rights to argue whether the Buyer is a Disbursing Entity and nothing herein shall constitute, or be deemed to constitute, a determination that the Buyer is a Disbursing Entity.

**Miscellaneous**

60.    Immaterial Modifications. Without need for further order or authorization of the Bankruptcy Court, but subject to any limitations set forth in the Plan, the Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement, and any other document that is necessary to effectuate the Plan that does not materially modify the terms of such documents and are consistent with the Plan and this

Confirmation Order.

61.    <u>Effect of Confirmation on Modifications</u>.  Entry of this Confirmation Order means that all modification or amendments to the Plan since the solicitation thereof are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

62.    <u>Documents and Instruments</u>.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

63.    <u>Conditions to Effective Date</u>.  The Plan shall not become effective unless and until the conditions set forth in Article VIII of the Plan have been satisfied or waived pursuant to Article VIII of the Plan.

64.    <u>Vacatur of Order</u>.  If this Confirmation Order is vacated or deemed vacated, then the Plan shall be deemed null and void in all respects, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims against or Interests in the Debtors, (ii) prejudice in any manner the rights of the holder of any Claim against, or Interest in, the Debtors, (iii) prejudice in any manner any right, remedy or claim of the Debtors, or (iv) be deemed an admission against interest by the Debtors or any other Person or Entity.

65.    <u>Insurance Policies</u>.  Any and all proceeds of the Debtors' Insurance Policies received by or payable to the Debtors pursuant to the terms of the Insurance Policies shall be deemed assigned to the Buyer to the extent provided in the Asset Purchase Agreement.  Except to the extent determined by Final Order to be Executory Contracts, the Debtors' Insurance Policies and any agreements, documents or instruments relating thereto shall not be treated as or

deemed to be Executory Contracts. On the Effective Date, the Debtors retain all such Insurance Policies not assigned to the Buyer pursuant to the Asset Purchase Agreement, and nothing in the Plan, including any releases, shall diminish or impair the enforceability of any Insurance Policies that cover claims against the Debtors or any other Entity. To the extent such Insurance Policies are determined by Final Order to be Executory Contracts subject to assumption pursuant to section 365 of the Bankruptcy Code, such Insurance Policies shall not be assumed by the Debtors unless such relief is sought by the Debtors within sixty (60) days after entry of a Final Order determining that such Insurance Policies constitute Executory Contracts, and is approved by the Court. Nothing in the Plan nor this Confirmation Order shall affect the rights or obligations of any party including, but not limited to, the Debtors, the Buyer, the Debtors' current or former directors and officers, under that certain Insurance Policy issued to the Debtors under number ML 7601232-02 by Argonaut Insurance Company (the "D&O Policy"). Notwithstanding anything to the contrary in the Plan or this Confirmation Order, no Insured (as defined in the D&O Policy) shall be required to seek relief from the automatic stay imposed by Bankruptcy Code section 362 or the injunction provisions set forth in the Plan and this Confirmation Order to make or pay a claim under the D&O Policy subject to the terms and conditions thereof.

66.     Retention of Jurisdiction. The Bankruptcy Court shall retain and have exclusive jurisdiction over any matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to Bankruptcy Code sections 105(a) and 1142, including, but not limited to the matters set forth in Article X of the Plan.

67.     Conflicts. Except as set forth in the Plan, to the extent that any provision of any other Restructuring Document or any document or other exhibits, schedules, appendices, supplements, or amendments of any document referenced in the Plan (the "Plan Related

Documents") conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided that, with respect to any conflict or inconsistency between the Plan or the Plan Related Documents on the one hand, and the Confirmation Order on the other, the Confirmation Order shall govern.

68.    <u>Severability of Plan Provisions</u>.  Each term and provision of the Plan, as it may have been amended by this Confirmation Order, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the Debtors', the Creditors Committee's, and the Buyer's consent; and (iii) non-severable and mutually dependent.

69.    <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

70.    <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to Bankruptcy Code sections 1123(a) and 1142(a), the provisions of this Confirmation Order, the Plan, the Plan Supplement, and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

71.    <u>Notice of Order</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form annexed hereto as **<u>Exhibit A</u>**, to all parties who currently hold a Claim or Interest in these

Chapter 11 Case, including the U.S. Trustee, the Internal Revenue Service, the United States attorney for the District of Delaware, the SEC, and any party filing a notice pursuant to Bankruptcy Rule 2002, and all counterparties to executory contracts and unexpired leases. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order.

72.     <u>Term of Injunctions or Stays</u>.   The injunctions contained in the Plan, including, but not limited to those provided in Article VII of the Plan, are hereby authorized, approved and binding on all Persons and Entities described therein.  Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays pursuant to Bankruptcy Code sections 105 or 362 arising under or entered during the Chapter 11 Cases, or otherwise, and in existence on the date hereof, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay and to the extent consistent with the terms and provisions of the Plan or this Confirmation Order, as applicable.

73.     <u>Substantial Consummation</u>.   On the Effective Date and the transfer of the Acquired Assets to the Buyer, the Plan shall be deemed to be substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

74.     <u>Resolution of DFTJL Properties LLC Objection</u>.  With respect to the Unexpired Lease of DFTJL Properties LLC, the Debtors shall remain liable for any unpaid cure amounts and all obligations arising under the Unexpired Lease that were not otherwise required to be asserted as a cure cost, including any obligations to indemnify the non-Debtor counterparty pursuant to the terms of the Unexpired Lease, which are not known or liquidated at the time of the Confirmation Hearing. Other than with respect to cure amounts fixed in connection with the Plan pursuant to Bankruptcy Code section 365, all rights of the parties to dispute amounts due

under an Unexpired Lease of non-residential real property are preserved; <u>provided</u>, for the avoidance of doubt, the Buyer shall be entitled to assert the same defenses, if any of the prior tenant under such Unexpired Lease, including any rights of setoff or counter-claim.

75.    Resolution of Riverside Town Center 1 Objection.  With respect to the Unexpired Lease of Riverside Town Center 1 ("Riverside"), nothing in the Plan or in this Order shall modify the Debtors' or Buyer's obligation, upon assumption, to pay: (1) amounts owed under such Unexpired Lease of non-residential real property that are unbilled or not yet due as of the Confirmation Date, whether accruing prior to or after the effective date of assumption of such Unexpired Lease, such as for common area maintenance, insurance, taxes, and similar charges; and any regular or periodic ordinary course year-end adjustments and reconciliations of such charges provided for under the terms of such Unexpired Lease, whether accruing prior to or after the effective date of assumption of such Unexpired Lease, as such charges become due in the ordinary course in accordance with the terms of such Unexpired Lease; (2) any percentage rent that may come due under the such assumed Unexpired Lease of non-residential real property; (3) any other obligations, including indemnification obligations (if any) that arise from third-party claims asserted with respect to or arising from the Debtors' use and occupancy of the premises prior to the Closing for which the Debtors had a duty to indemnify Riverside pursuant to such Unexpired Lease, solely with respect to available insurance coverage that survives the Closing (if any), or the Debtors' or Buyer's obligation to pay any postpetition expenses under such Unexpired Lease as they come due under such Unexpired Lease; and (4) any unpaid cure amounts or post-assumption obligations under such assumed Unexpired Lease of non-residential real property, provided, that nothing herein shall prejudice the rights of the Debtors or Buyer to dispute any of the obligations, fees, costs, expenses, or other amounts set forth in this paragraph;

provided, further, for the avoidance of doubt, the Buyer shall be entitled to assert the same defenses, if any of the prior tenant under such Unexpired Lease, including any rights of setoff or counter-claim.

76.    Notwithstanding any of the releases, discharges, injunctions or waivers set forth in the Plan, nothing in the Plan or this Confirmation Order shall modify the rights, if any, of Riverside to assert any right of setoff or recoupment that Riverside may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, the ability, if any, of Riverside to setoff or recoup a security deposit held pursuant to the terms of its Unexpired Lease with the Debtors and/or the Buyer, provided, that nothing herein shall prejudice the rights of the Debtors or Buyer to dispute any such rights of setoff or recoupment.

77.    No Waiver. The failure to specifically include or refer to any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

78.    Waiver of Stay. The requirement under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen (14) days after entry of the order is hereby waived. This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062 or other applicable rule.

Dated:    November 15, 2017
          Wilmington, Delaware

The Honorable Brendan L. Shannon
Chief United States Bankruptcy Judge